# IN THE SUPREME COURT OF IOWA

No. 16–0131

Filed September 9, 2016

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**KENNETH J. WEILAND JR.,**

Respondent.

---

On review of the report of the Grievance Commission of the Supreme Court of Iowa.

The grievance commission reports an attorney committed ethical misconduct and recommends a thirty-day suspension. **LICENSE SUSPENDED.**

Tara M. van Brederode and Elizabeth Quinlan, Des Moines, for complainant.

Kenneth J. Weiland Jr., Des Moines, pro se.

**ZAGER, Justice.**

The Iowa Supreme Court Attorney Disciplinary Board (Board) filed a two-count complaint charging an attorney with violations of several of our ethical rules based on his actions in a dissolution-of-marriage case. After a hearing, the Grievance Commission of the Supreme Court of Iowa (commission) found the attorney's conduct violated a number of ethical rules and recommended we impose a thirty-day suspension. Upon our de novo review, we conclude the Board proved by a convincing preponderance of the evidence violations of rules 32:1.15(d) (promptly delivering client funds) and 32:1.15(f) (following court rules for trust accounts) under count I of the complaint. We also conclude the Board proved by a convincing preponderance of the evidence violations of rules 32:1.3 (diligence), 32:1.4(a)(3) (keeping client reasonably informed), 32:1.4(a)(4) (promptly complying with reasonable requests), 32:1.16(d) (terminating representation), 32:3.2 (expediting litigation), 32:8.4(c) (dishonesty, fraud, deceit, or misrepresentation), and 32:8.4(d) (conduct prejudicial to the administration of justice) under count II of the complaint. However, we find the Board did not prove by a convincing preponderance of the evidence a violation of rule 32:1.15(c) (depositing and withdrawing fees from trust account). While the commission recommended a thirty-day suspension, we impose a sixty-day suspension for the rules violations.

## I. Background Facts and Proceedings.

Attorney Kenneth J. Weiland Jr. was admitted to practice law in Iowa on June 17, 1994. He has a general law practice in Des Moines with approximately one-half of his cases involving family law and criminal defense. Weiland is a sole practitioner with no support staff who works from a home office. The Board's complaint in this case arises

from Weiland's representation of Chelli Gentry in a dissolution-of-marriage action.

On March 10, 2014, Weiland met Gentry at a Perkins restaurant in Ankeny to discuss a divorce proceeding. Weiland and Gentry signed an agreement whereby Weiland would represent Gentry in a dissolution-of-marriage action against her spouse, Tammy Dolan. They agreed that Gentry would pay a $1000 retainer. At this initial meeting, Gentry wrote Weiland a check for $600. Because Gentry had recently declared bankruptcy and was not in a good financial position, they agreed that Gentry would pay Weiland additional $100 monthly installments until the full $1000 retainer was reached.

Gentry made two of the additional payments in April and May, but then stopped making payments after a lack of communication from Weiland. Weiland deposited the initial $600 check into his trust account, but deposited the other two payments in his general account for work performed and filing fees. Weiland testified that he prepared a disbursement letter on March 25, which stated he had performed one and one-half hours of work at a rate of $150 per hour, and therefore $225 would be deducted from the amount held in trust. Gentry testified that she never received the disbursement letter. Weiland did not deduct the $225 from the trust account at this time.

Weiland prepared a petition for dissolution of marriage and met with Gentry for a second time on March 26. There were no custody issues or significant assets to be divided. However, Gentry's spouse lived in Oklahoma and was unaware that Gentry intended to initiate divorce proceedings. Gentry signed the petition at this second meeting, and it was her understanding that Weiland would immediately file the petition.

On March 30, Gentry followed up by emailing Weiland her bankruptcy schedules and a list of personal property.

In early April, Weiland attempted to file the petition electronically through the Electronic Document Management System (EDMS). Weiland testified that he had only used EDMS to file small claims actions prior to Gentry's case and was unfamiliar with how the system worked with family law cases. He was unaware that he was required to file a separate confidential information form along with the petition for dissolution of marriage. EDMS rejected the filing, and Weiland received an email informing him of the rejection. Despite this notification, Weiland did not attempt to refile the petition, nor did he contact Gentry to inform her that he was having difficulty filing the petition. Weiland did not attempt to file the petition again until four months later, on August 6.

In the meantime, on April 14, Gentry emailed Weiland to ask whether Dolan had been served with the petition. Despite the fact that he knew the petition had not been filed, Weiland responded, "I have not been advised that Tammy has been served, but I will try to find out if the Sheriff can tell me when service will occur." Weiland admitted during his testimony this email was misleading. Because of the email, Gentry was under the impression that the petition had been filed and Dolan would soon be served. Gentry had not informed Dolan that she was filing for divorce, so she ignored all of Dolan's phone calls during this time because she was nervous about Dolan's reaction. Gentry testified that she was under a heightened amount of stress and anxiety while she waited for Dolan to be served.

Gentry emailed Weiland again on May 14 to ask if he had heard anything from the sheriff regarding whether Dolan had been served. Between May 14 and June 11, Gentry and Weiland spoke on the phone

on a number of occasions. During at least one of the phone calls, Weiland told Gentry that his mother was ill and apologized for the delay in responding to her. Weiland never informed Gentry that he had yet to file the petition. However, Weiland told Gentry that he had contacted the sheriff's office in Oklahoma and was told the sheriff was having difficulty serving Dolan because she lived out in the country and they could not find her house. Weiland asked for Dolan's work information to provide to the sheriff. As a courtesy, Gentry had not wanted to serve Dolan at her place of employment. However, since Gentry was under the impression that service had been attempted and was difficult at Dolan's home, she provided Weiland with Dolan's work address.

On August 4, Gentry's son contacted the sheriff's office in Oklahoma for an update on whether Dolan had been served. It was at this time that he was informed by the sheriff's office that it had no documentation of Weiland ever requesting service. Based on this information, Gentry attempted to contact Weiland by phone on August 4 and August 5. When Weiland did not answer her phone calls, she left messages asking for an update on her case and informing Weiland that she would report him to the Iowa State Bar Association if she did not get a response. Weiland did not return her phone calls.

On August 7, Gentry went to the Polk County courthouse to attempt to gain information about the status of her case. At the courthouse, she was informed for the first time that there were no divorce filings under her name. Gentry proceeded to call the Iowa State Bar Association to ask what she needed to do in order to file a complaint against Weiland. She was advised to send a letter to Weiland terminating him as her attorney and then to file a complaint with the Board. On the same day, Gentry mailed Weiland a letter terminating

their attorney–client relationship, asking for the return of any documents, and requesting a refund of the $800 she had paid as a retainer. Gentry filed a complaint with the Board on August 12.

It was not until December that Gentry found out Weiland had successfully filed the petition the day before she went to the courthouse on August 6. Because Gentry was unaware that Weiland had successfully filed the petition, she thought no further action was being taken on her case. Weiland never filed a withdrawal from the case and never informed Gentry that the petition was now on file. Weiland had no further contact with Gentry even though he was still the counsel of record in the case. He testified that he did not withdraw because he was waiting for another attorney to make an appearance in the case.

As part of its case processing of the divorce, the district court entered an order scheduling a pretrial conference for December 15. Weiland received a copy of the pretrial conference order, but he did not provide Gentry with a copy. Weiland did not appear in court for the pretrial conference, and because Gentry had no notice of the court date, she also did not appear. Dolan did not appear because she was unaware a dissolution action had been filed against her. The district court entered an order continuing the pretrial conference until January 16, 2015. Even though she had yet to be served with the divorce documents, Dolan received a mailed notice that she had failed to appear for a pretrial conference in a divorce proceeding. This was the first notice Dolan received that Gentry had filed for divorce. Dolan called Gentry and was extremely upset. This phone call was the first time that Gentry realized Weiland had actually filed the petition.

Gentry sent Weiland an email on December 15 asking him to file a withdrawal so she would be able to receive notification of any future

court hearings directly. She also asked about any papers that needed to be served on Dolan and whether she should take them with her when she went to Oklahoma for the holidays. She informed Weiland that she was leaving on December 21. The evening of December 21, Weiland emailed Gentry a number of documents for the divorce and told her to take the acceptance of service to Dolan for her signature. Gentry had already left for Oklahoma and did not see the email. She did not check her email while she was in Oklahoma. After her return, Gentry hired Jeremy Masterson to represent her. He filed an appearance on her behalf on January 15, 2015, and her divorce was finalized in May.

Based on these facts, the Board filed a two-count complaint on July 13. Count I included trust account issues and alleged that Weiland violated rules 32:1.15(c) (depositing and withdrawing fees from trust accounts), 32:1.15(d) (promptly delivering client funds), and 32:1.15(f) (following court rules for trust accounts). Count II included diligence, communication, and misconduct issues and alleged that Weiland violated rules 32:1.3 (diligence), 32:1.4(a)(3) (keeping client reasonably informed), 32:1.4(a)(4) (promptly complying with reasonable requests), 32:1.16(d) (terminating representation), 32:3.2 (expediting litigation), 32:8.4(c) (dishonesty, fraud, deceit, or misrepresentation), and 32:8.4(d) (conduct prejudicial to the administration of justice).

A hearing was conducted before the commission on November 5. Both Weiland and Gentry testified. The day of the hearing, Weiland refunded Gentry's retainer of $600. The commission filed its findings of fact, conclusions of law, and recommended sanction on January 12, 2016. It concluded the Board proved a violation of rule 32:1.15(d) under count I and violations of rules 32:1.3, 32:1.4(a)(3), 32:1.4(a)(4), 32:1.16(d), 32:3.2, 32:8.4(c), and 32:8.4(d) under count II. The

commission concluded the Board did not prove violations of rules 32:1.15(c) or 32:1.15(f). Finally, the commission recommended Weiland receive a thirty-day suspension.

## II. Standard of Review.

Our standard of review for attorney disciplinary cases is de novo. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Att'y Doe No. 792*, 878 N.W.2d 189, 193 (Iowa 2016). "The Board must prove attorney misconduct by a convincing preponderance of the evidence, a burden greater than a preponderance of the evidence but less than proof beyond a reasonable doubt." *Id.* (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Cross*, 861 N.W.2d 211, 217 (Iowa 2015)). Although we give the commission's findings and recommendations respectful consideration, we are not bound by them. *Id.* If we find the Board proved misconduct by a convincing preponderance of the evidence, we may impose a greater or lesser sanction than recommended by the commission. *Id.* at 193–94.

## III. Analysis.

**A. Count I: Trust Account Violations.** The Board alleged Weiland violated rule 32:1.15(c), (d), and (f) under count I of the complaint. In relevant part, rule 32:1.15 provides,

> (c) A lawyer shall deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred.
> (d) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.
>
> . . . .

> (f) All client trust accounts shall be governed by chapter 45 of the Iowa Court Rules.

Iowa R. Prof'l Conduct 32:1.15. In regard to the Iowa Court Rules, we have previously explained,

> Iowa Court Rules 45.1, 45.2(2), 45.3, 45.4, and 45.7 generally set forth the details a lawyer needs to know and follow when administering his or her trust accounts. These rules generally require a lawyer to place client funds into a separate subaccount, withdraw payment from the trust account only once the fee is earned, notify the client when the attorney anticipates making a fee withdrawal, and provide the client a complete accounting of any such withdrawal. The attorney must also transmit the notice of such withdrawal and accounting no later than the date of withdrawal.

*Iowa Supreme Ct. Att'y Disciplinary Bd. v. Baldwin*, 857 N.W.2d 195, 210–11 (Iowa 2014) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Parrish*, 801 N.W.2d 580, 586 (Iowa 2011)). An attorney must also refund any unearned advance fees. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ryan*, 863 N.W.2d 20, 27 (Iowa 2015); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kelsen*, 855 N.W.2d 175, 181 (Iowa 2014).

Prematurely withdrawing fees violates rule 32:1.15(c), as does failing to render a contemporary accounting when withdrawing fees. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Blessum*, 861 N.W.2d 575, 590 (Iowa 2015). When an attorney withdraws funds from a trust account, he or she must give contemporary notice to the client. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kersenbrock*, 821 N.W.2d 415, 419 (Iowa 2012).

The commission found Weiland violated rule 32:1.15(d) because he did not refund to Gentry her retainer fee until the date of the hearing, on November 5, 2015. Weiland was unable to offer any explanation for why he had not refunded the money at an earlier date, even though Gentry requested a refund over one year earlier on August 7, 2014. The commission did not find the Board proved a violation of rule 32:1.15(c)

because, although Weiland never deposited the two $100 checks in his trust account, he had earned the amount of the checks and thus they were not "paid in advance." The commission also did not find a violation of any pertinent Iowa Court Rule and therefore did not find a violation of rule 32:1.15(f).

1. *Rule 32:1.15(c) violation (depositing and withdrawing fees from trust account).* Rule 32:1.15(c) requires an attorney to deposit any legal fees and expenses "paid in advance" into a trust account. Iowa R. Prof'l Conduct 32:1.15(c). After their first meeting, Weiland deposited Gentry's $600 retainer check into his trust account. In April and May, Gentry sent Weiland two additional checks for $100 each. Weiland cashed both of these checks rather than depositing them in his trust account. He testified at the hearing the reason he did not deposit the checks into his trust account was because he had already earned the fees. He further testified that, by the time he had received the checks, he had paid a $185 filing fee and performed more than $15 in legal services. Additionally, Weiland claims to have prepared a disbursement letter in March indicating he had performed 1.5 hours of work at a rate of $150 and was therefore entitled to deduct $225 from the $600 already deposited in his trust account. Although Gentry testified that she never received this letter, at the time Weiland cashed the subsequent two checks, he had never deducted any money from the trust account. We agree with the commission that the checks were not "paid in advance." Rather, the fees were already earned by the point that Weiland received the additional checks. *See, e.g.*, *Kersenbrock*, 821 N.W.2d at 419 ("The Board did not produce any evidence establishing the fees were unearned."). We therefore find the Board did not prove that Weiland violated rule 32:1.15(c) by a convincing preponderance of the evidence.

2. *Rule 32:1.15(d) violation (promptly delivering client funds).* Rule 32:1.15(d) requires an attorney to "*promptly* deliver to the client . . . any funds or other property that the client . . . is entitled to receive and, upon request by the client . . . , shall promptly render a full accounting." Iowa R. Prof'l Conduct 32:1.15(d) (emphasis added). On August 7, 2014, Gentry mailed Weiland a letter terminating their attorney–client relationship and requesting a refund of the $800 she had paid toward the retainer. Weiland testified that he received Gentry's letter, but he did not file a withdrawal in the case or reimburse Gentry any of the money she had paid. Weiland did not refund Gentry any money until the day of the hearing before the commission, on November 5, 2015—more than one year after her initial request for reimbursement. Weiland was unable to offer any explanation for the year-long delay other than "freezing up" after the complaint to the Board was filed. We agree with the commission that the Board proved a violation of rule 32:1.15(d) by a convincing preponderance of the evidence.

3. *Rule 32:1.15(f) violation (following court rules for trust accounts).* Rule 32:1.15(f) requires an attorney to abide by the Iowa Court Rules in maintaining their client trust accounts. *Id.* r. 32:1.15(f). The Board did not allege a violation of any specific Iowa Court Rule, but instead stated that rule 32:1.15(f) requires an attorney to abide by the rules contained in chapter 45. The commission looked at two Iowa Court Rules—rule 45.7(4) and rule 45.10(3)—when determining that Weiland did not violate rule 32:1.15(f). In addition to rules 45.7 and 45.10, we may also evaluate any of the other rules contained in chapter 45 of the Iowa Court Rules to determine whether an attorney has violated Iowa Rule of

Professional Conduct 32:1.15(f).  *See, e.g.*, *Baldwin*, 857 N.W.2d at 210–11.[1]

Rule 45.2(2) contains nearly identical language to rule 32:1.15(d) and requires a lawyer to "promptly deliver to the client . . . any funds or other property that the client . . . is entitled to receive."  *Compare* Iowa Ct. R. 45.2(2), *with* Iowa R. Prof'l Conduct 32:1.15(d).  Since we find a violation of rule 32:1.15(d), we likewise find that Weiland violated rule 45.2(2).

Rule 45.7 corresponds to Iowa Rule of Professional Conduct 32:1.15(c) and prohibits an attorney from withdrawing funds from a client trust account before they are earned.  *Compare* Iowa Ct. R. 45.7, *with* Iowa R. Prof'l Conduct 32:1.15(c); *see also Parrish*, 801 N.W.2d at 586.  Because we find the Board did not prove a violation of rule 32:1.15(c), we likewise do not find a violation of Iowa Court Rule 45.7.

Rule 45.10 defines "flat fee" and contains rules for when an attorney is required to deposit a flat fee and when the attorney can withdraw any portion of a flat fee.  Weiland testified that he intended to charge Gentry a flat fee of $1000.  However, the agreement that Gentry signed provided for hourly fees at a rate of $150 per hour.  We agree with the commission that rule 45.10 was not violated because it was only Weiland's unspoken intent not to charge Gentry more than $1000 that would implicate the rule.

---

[1]Rule 45.1 requires an attorney to establish and clearly designate a trust account to hold client funds.  Iowa Ct. R. 45.1.  Rule 45.3 describes the type of institution attorneys should use to establish client trust funds.  *Id.* r. 45.3.  Rule 45.4 requires an attorney to use a pooled interest-bearing trust account unless one of two exceptions applies.  *Id.* r. 45.4.  Rule 45.5 defines "allowable monthly service charge."  *Id.* r. 45.5.  Rule 45.6 requires an attorney to certify their records annually.  *Id.* r. 45.6.  Rules 45.8 and 45.9 define the terms "general retainer" and "special retainer."  *Id.* r. 45.8, .9.  These rules are not at issue in this case.

**B. Count II: Diligence, Communication, and Misconduct Violations.**

1. *Rule 32:1.3 violation (diligence).* Rule 32:1.3 provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client." Iowa R. Prof'l Conduct 32:1.3. We have previously recognized that an attorney violates this rule when he or she neglects a client's case. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Weiland,* 862 N.W.2d 627, 635 (Iowa 2015). In this context, neglect is defined as "a consistent failure to perform those obligations that a lawyer has assumed, or a conscious disregard for the responsibilities a lawyer owes to a client." *Id.* (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Lickiss,* 786 N.W.2d 860, 867 (Iowa 2010)). Ordinary negligence does not rise to the level of neglect required to find a violation of rule 32:1.3. *Id.* This is because "[a] violation of this rule arises not from inadvertent acts or omissions from missing a single deadline, but from consistently failing to perform functions required of an attorney or from repeatedly missing deadlines." *Id.* (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Conroy,* 845 N.W.2d 59, 64 (Iowa 2014)).

When an attorney "fails to appear at scheduled court proceedings, does not make the proper filings, or is slow to act on matters," he or she violates rule 32:1.3. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kingery,* 871 N.W.2d 109, 117 (Iowa 2015) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Nelson,* 838 N.W.2d 528, 537 (Iowa 2013)). In the past, we have held that an attorney violated rule 32:1.3 when he failed to appear for a client's pretrial conference. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. McCarthy,* 814 N.W.2d 596, 606 (Iowa 2012).

In this case, Weiland had difficulty filing Gentry's divorce petition with EDMS. While this alone is not sufficient to rise to a violation of rule

32:1.3, Weiland's actions following the rejection of his filing demonstrate both a "consistent failure" to perform and a "conscious disregard" for the obligations he had to Gentry. *See, e.g.*, *Weiland*, 862 N.W.2d at 635. Following the rejection of the dissolution petition, Weiland failed to communicate with Gentry that he was having difficulties. Over a period of four months, Weiland misled Gentry into believing her petition had been filed and the issues with serving Dolan came from the Oklahoma sheriff. He failed to return Gentry's two phone calls in August. Gentry ceased paying him due to the breakdown in communication. Although Weiland originally attempted to file the petition in April, he did not attempt to file it again until August, when he was ultimately successful.

Contemporaneously with the successful filing of the petition, Gentry terminated the attorney–client relationship. However, Weiland failed to notify Gentry that he had successfully filed the petition, and Gentry did not know that the petition had in fact been filed. Weiland failed to file a withdrawal with the court after the termination of the attorney–client relationship. As a result, he continued to be the attorney of record and received the notice from the court as to the scheduling of the pretrial conference. Weiland failed to inform Gentry of the scheduled pretrial conference. Neither Weiland nor Gentry appeared at the pretrial conference, requiring the court to reschedule.

In January 2015, Gentry was able to secure other representation, and Weiland was allowed to withdraw from representation. Substitute counsel finalized Gentry's divorce in May 2015, fourteen months after she entered into the agreement with Weiland. Weiland testified that a dissolution-of-marriage case similar to Gentry's would normally take him a few months to complete.

Additionally, the comments to the rule provide that "[e]ven when the client's interests are not affected in substance, . . . unreasonable delay can cause a client needless anxiety and undermine confidence in the lawyer's trustworthiness." Iowa R. Prof'l Conduct 32:1.3 cmt. 3. Gentry testified that she lived in a state of heightened anxiety in the spring and summer of 2014 because she did not know when Dolan would be served or how she would respond. She avoided answering the phone when Dolan called her out of nervousness and fear of Dolan's response. We agree with the commission that the Board proved a violation of rule 32:1.3 by a convincing preponderance of the evidence.

2. *Rule 32:1.4(a)(3) violation (keeping client reasonably informed).* Rule 32:1.4(a)(3) provides that a lawyer shall keep his or her client "reasonably informed" about the status of the client's legal matter. *Id.* r. 32:1.4(a)(3).

Not only did Weiland fail to keep Gentry reasonably informed about her divorce, he misled her regarding the filing status of the case and service of process on Dolan. When Gentry contacted Weiland in April, he told her that he was waiting to hear from the sheriff to know when service on Dolan would occur. Weiland admitted during the hearing that this was misleading. Because of this email, Gentry was under the impression that the petition had been filed and began waiting for Dolan to be served. In May and June, Gentry spoke with Weiland about the status of her case, and Weiland told her that the sheriff was unable to locate Dolan's home and needed her work information. Again, these communications misled Gentry into believing the petition had been filed and Dolan would soon be served.

After Gentry terminated the attorney–client relationship, Weiland failed to withdraw as counsel and failed to have any communication with

Gentry for over four months. Although he had finally been successful in filing the divorce petition, he never informed Gentry, who continued to be under the impression that her case had stalled. Weiland did not inform Gentry of the upcoming court date, and as a result, Gentry was unaware of her first pretrial conference. We agree with the commission that the Board proved a violation of rule 32:1.4(a)(3) by a convincing preponderance of the evidence.

3. *Rule 32:1.4(a)(4) violation (complying with reasonable requests).* Rule 32:1.4(a)(4) provides that a lawyer shall "promptly comply with reasonable requests for information." *Id.* r. 32:1.4(a)(4). This is because "[r]easonable communication between the lawyer and the client is necessary for the client effectively to participate in the representation." *Id.* cmt. 1. An attorney violates this rule when he or she fails to keep their client informed about the progress on the case, repeatedly fails to respond to requests for information, or does not respond to a client's attempts to contact the attorney. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Silich*, 872 N.W.2d 181, 189–90 (Iowa 2015).

> A lawyer's regular communication with clients will minimize the occasions on which a client will need to request information concerning the representation. When a client makes a reasonable request for information, however, paragraph (a)(4) requires prompt compliance with the request, or if a prompt response is not feasible, that the lawyer . . . acknowledge receipt of the request and advise the client when a response may be expected.

Iowa R. Prof'l Conduct 32:1.4 cmt. 4.

Weiland first attempted to file the divorce petition in early April 2014. Following this, Gentry contacted Weiland in mid-April for an update on her case and whether Dolan had been served. Rather than inform her of the delay in filing, Weiland told Gentry he was waiting on information from the sheriff's office in Oklahoma. When Gentry followed

up with Weiland in May and June regarding the status of her case, he continued to mislead her by saying the delay rested with the sheriff in Oklahoma.

In August, Gentry unsuccessfully tried to contact Weiland for an update on her divorce, and ultimately left him a message saying she needed an update or she would report him for misconduct. Weiland did not return Gentry's phone calls. We agree with the commission that the Board proved a violation of rule 32:1.4(a)(4) by a convincing preponderance of the evidence.

4. *Rule 32:1.16(d) violation (terminating representation).* Rule 32:1.16(d) provides,

> Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled, and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by law.

*Id.* r. 32:1.16(d).

Weiland testified the reason he failed to withdraw from the case immediately after receiving Gentry's August 7 termination letter was to give her time to retain new counsel. He further testified that he expected he would be contacted by a new attorney requesting Gentry's files. When Weiland was eventually contacted by Gentry's new counsel approximately six months later, he transferred all of the files. He did not, however, transfer the $600 remaining in his trust account to Gentry's new counsel. Weiland testified that when the files were requested, there was no mention of money so he forgot to send a check.

While Weiland was cooperative in transferring Gentry's files, he failed to protect her interests in the time between her termination letter

and when she obtained new counsel. Although the petition had been filed and Weiland remained counsel of record, he failed to notify Gentry of the filing or of the pretrial conference. As a result, Gentry missed the scheduled pretrial conference. Further, Weiland did not return the $600 remaining in his trust account until the day of the hearing in front of the commission. He retained the $600 despite knowing that Gentry had recently filed for bankruptcy and was struggling to make ends meet. Weiland was unable to articulate a reason for the delay in returning the money. We agree with the commission that the Board proved a violation of rule 32:1.16(d) by a convincing preponderance of the evidence.

5. *Rule 32:3.2 violation (expediting litigation).* Rule 32:3.2 provides that "[a] lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client." *Id.* r. 32:3.2. Our rules require attorneys to expedite litigation because "[d]ilatory practices bring the administration of justice into disrepute." *Id.* cmt. 1. The question we address in failure-to-expedite cases is "whether a competent lawyer acting in good faith would regard the course of action as having some substantial purpose other than delay." *Id.*; *see also Weiland*, 862 N.W.2d at 636–37. An attorney violates this rule when he or she fails to timely "file documents, pursue appeals, and meet deadlines." *Conroy*, 845 N.W.2d at 65.

We have found a violation of this rule when attorneys have failed to comply with discovery rules. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Cunningham*, 812 N.W.2d 541, 548 (Iowa 2012). We have found a violation of this rule when an attorney serially failed "to comply with the requirements of this court's procedural rules governing the timely presentation and progression of appeals." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kieffer–Garrison*, 847 N.W.2d 489, 493 (Iowa 2014).

We have also found a violation of this rule when attorneys have missed deadlines, failed to comply with procedural timelines, failed to appear, or failed to respond to court inquiries. *See Silich*, 872 N.W.2d at 190.

In this case, Weiland violated this rule in numerous respects. After his initial attempt to file the petition, Weiland undertook no efforts to timely correct the rejected EDMS filing. Weiland acknowledged that he was not sure how to correct the filing, moved on to other matters, and simply did not get around to it. At the same time, Weiland knew of the urgency of Gentry's situation and falsely led her to believe that the petition had been filed and that service of process would be forthcoming. In fact, the successful filing did not occur for four months. Further, at no time did Weiland ever make any effort to obtain service on Dolan in Oklahoma. Neither Weiland nor Gentry appeared at the pretrial conference, causing further delay in the processing of this case. While Weiland claims that he contacted the district court on the same day to explain his absence, this provides no excuse. Ultimately, this dissolution action took well over twice as long to complete as a case of this nature would normally require. This failure to expedite litigation was clearly inconsistent with Gentry's interests. We agree with the commission and find that the Board proved a violation of rule 32:3.2 by a convincing preponderance of the evidence.

6. *Rule 32:8.4(c) violation (dishonesty, fraud, deceit, or misrepresentation).* Rule 32:8.4(c) provides that a lawyer shall not "engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." Iowa R. Prof'l Conduct 32:8.4(c). We consider violations of rule 32:8.4(c) serious in nature because "[h]onesty is necessary for the legal profession to function." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Haskovec*, 869 N.W.2d 554, 560 (Iowa 2015). "[F]or

purposes of attorney discipline, offenses against common honesty should be clear even to the youngest lawyers; and to distinguished practitioners, their grievousness should be even clearer." 7A C.J.S. *Attorney and Client* § 103, at 24 (2015).

When a violation of this rule is alleged, we "require a reasonable level of scienter to find an attorney violated rule 32:8.4(c)." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Stoller*, 879 N.W.2d 199, 212 (Iowa 2016) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Qualley*, 828 N.W.2d 282, 292 (Iowa 2013)). Neither negligent behavior alone nor incompetence violates this rule. *Id.* "In the legal sense, a misrepresentation usually requires something more than negligence." *Id.* (quoting *Parrish*, 801 N.W.2d at 587). When we are asked to determine whether an attorney's conduct violates this rule, "the key question we must answer is whether the effect of the lawyer's conduct is to mislead rather than to inform." *Id.* (quoting *Haskovec*, 869 N.W.2d at 560).

Here, Weiland misrepresented to Gentry that her petition had been filed and that Dolan would be served in Oklahoma. In April, after he knew the petition had been rejected, he told Gentry in an email that he would "try to find out if the sheriff can tell [him] when service will occur." Gentry believed that the petition had been filed and Dolan would soon be served. Gentry avoided answering phone calls from Dolan out of fear of her reaction to the filing. Gentry contacted Weiland again in May and June to check on the status of her case and whether service had been obtained. Rather than inform Gentry of the filing issue, Weiland continued with the guise that the difficulty he was encountering came from the sheriff's office in Oklahoma. He told Gentry that the sheriff was having difficulty locating Dolan because she lived in the country and requested her work information. These conversations led Gentry to

believe that Weiland had filed the petition, forwarded the documents to Oklahoma for service, and it was out of his hands while he waited for the sheriff to successfully serve Dolan. Weiland admitted that he misled Gentry into believing he had filed the petition and that he knew his behavior resulted in Gentry's belief that her divorce petition had been filed and Dolan would soon be served.

The commission found the Board proved a violation of rule 32:8.4(c) for misrepresentation. It found that Weiland knowingly misrepresented a material fact to Gentry when he continued to tell her that the sheriff in Oklahoma was attempting service, thus leading her to believe her petition had been filed. We agree with the commission and find the Board proved a violation of rule 32:8.4(c) by a convincing preponderance of the evidence.

7. *Rule 32:8.4(d) (conduct prejudicial to the administration of justice).* Rule 32:8.4(d) provides that a lawyer shall not "engage in conduct that is prejudicial to the administration of justice." Iowa R. Prof'l Conduct 32:8.4(d). There is no precise test for determining whether an attorney's conduct violates the rule. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Monroe*, 784 N.W.2d 784, 788 (Iowa 2010). "Generally, acts that have been deemed prejudicial to the administration of justice have 'hampered the efficient and proper operation of the courts or of ancillary systems upon which the courts rely.' " *Id.* (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Borth*, 728 N.W.2d 205, 211 (Iowa 2007)). The rule is intended to prohibit conduct by an attorney that has an undesirable *effect*—some interference with the operation of the court system. *Id.* "Our prior cases have repeatedly held that an attorney violates rule 32:8.4(d) 'when his [or her] misconduct results in additional court proceedings or causes court proceedings to be delayed or

dismissed.' " *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Dolezal*, 841 N.W.2d 114, 124 (Iowa 2013) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Rhinehart*, 827 N.W.2d 169, 180 (Iowa 2013)).

After Weiland filed the petition on August 6, he did not inform Gentry of the successful filing. Weiland took no additional action to facilitate service on Dolan. A pretrial conference was set in December for which no one appeared. This caused rescheduling of the pretrial conference into January 2015. Even then, because of the need for Gentry to obtain substitute counsel and the shortness of the notice, this second pretrial conference was likewise continued. All of these actions and inactions by Weiland delayed the court proceedings and required additional time and scheduling by district court administration and the district court. We agree with the commission that the Board proved a violation of rule 32:8.4(d) by a convincing preponderance of the evidence.

**C. Sanctions.** The goal of our rules is to "maintain public confidence in the legal profession as well as to provide a policing mechanism for poor lawyering." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Netti*, 797 N.W.2d 591, 605–06 (Iowa 2011) (quoting *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Honken*, 688 N.W.2d 812, 820 (Iowa 2004)). We "determine an appropriate sanction based on the particular circumstances of each case." *Stoller*, 879 N.W.2d at 218 (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Morris*, 847 N.W.2d 428, 435 (Iowa 2014)).

> When crafting a sanction, we consider the nature of the violations, the attorney's fitness to continue in the practice of law, the protection of society from those unfit to practice law, the need to uphold public confidence in the justice system, deterrence, maintenance of the reputation of the bar as a whole, and any aggravating or mitigating circumstances.

*Id.* at 219 (quoting *Blessum*, 861 N.W.2d at 591).

1. *Count I (trust account violations).* We find that Weiland violated rules 32:1.15(d) and 32:1.15(f) under count I of the complaint. The sanctions we have imposed for trust account violations span a wide range, from public reprimands to license revocation. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Lubinus*, 869 N.W.2d 546, 550 (Iowa 2015). When there are isolated or minor trust account violations, we have generally imposed public reprimands. *Id.* However, when there are multiple or systematic trust account violations, we have generally imposed license suspensions. *Id.* at 551. When an attorney violates trust account rules in addition to other rule violations, we have imposed more severe sanctions. *Id.* at 552. These sanctions have ranged from sixty days to eighteen months. *See id.*

In *Iowa Supreme Court Attorney Disciplinary Board v. Boles*, we found an attorney violated rule 32:1.15(d) when he failed to return fees to clients for seventeen months, in addition to other rule violations. 808 N.W.2d 431, 439 (Iowa 2012). We suspended his license to practice law for a period of thirty days. *Id.* at 443. In *Lubinus*, we found the attorney violated rule 32:1.15(f), but his trust account violation was not a single, isolated incident. 869 N.W.2d at 549, 554. We suspended his license to practice law for a period of thirty days. *Id.* at 554.

In *Baldwin*, an attorney improperly held a client's files, records, and funds for a period of several months, despite repeated requests by the client for their return. 857 N.W.2d at 209–10. Baldwin also violated a number of other rules. *Id.* We suspended his license to practice law for a period of three months. *Id.* at 215. In *McCarthy*, we found the attorney violated rule 32:1.15(d) by not returning a client's funds for eleven months. 814 N.W.2d at 607. We found a number of other rule violations, and McCarthy had a history of prior disciplinary actions that

established a pattern of disrespect for our rules. *Id.* at 610. We suspended his license to practice law for a period of two years. *Id.*

2. *Count II (diligence, communication, and misconduct).* We also find that Weiland violated rules 32:1.3, 32:1.4(a)(3), 32:1.4(a)(4), 32:1.16(d), 32:3.2, 32:8.4(c), and 32:8.4(d) under count II of the complaint.

The sanctions we impose for neglect generally range between a public reprimand and a six-month suspension, depending on the circumstances of the violation. *Silich*, 872 N.W.2d at 193. While a public reprimand is appropriate when there is a single incident of neglect, we impose a license suspension if the attorney has a pattern of misconduct or has violated multiple rules. *Id.* In *Silich*, we found the attorney violated rule 32:1.3 when he took thirty-three months to resolve a client's Medicare lien. *Id.* at 189. We found the unreasonable delay, in conjunction with other rule violations and prior discipline, warranted a thirty-day suspension. *Id.* at 194.

In *Ryan*, we found a rule 32:1.3 violation when an attorney received a $1000 retainer from a client and thereafter left town and failed to withdraw or contact the client, who had to retain alternate counsel. 863 N.W.2d at 25. We also found that the attorney's actions violated rule 32:1.4(a)(3) and (a)(4) because she misled her client into believing she was working on the client's case. *Id.* at 25–26. Although Ryan's rule violations only involved one client, the client was vulnerable due to her financial position, and we imposed a six-month suspension. *Id.* at 31, 33.

In *Kingery*, we found violations of rules 32:1.4(a)(3) and (a)(4) when an attorney neglected multiple client matters and eventually stopped responding to client inquiries altogether. 871 N.W.2d at 119–20. We

also found a violation of rule 32:8.4(d) because the attorney's neglect of her client matters caused delays in the judicial process. *Id.* at 121. We ultimately suspended the attorney's license for sixty days. *Id.* at 125.

In *McCarthy*, we found an attorney violated rule 32:1.16(d) when he failed to refund a client's retainer for over one year. 814 N.W.2d at 607–08. We found other rule violations involving multiple clients, in addition to a history of prior disciplinary action and disregard for our rules. *Id.* at 611. We suspended the attorney's license for a period of two years. *Id.*

In *Iowa Supreme Court Attorney Disciplinary Bd. v. Nelissen*, we found an attorney violated rule 32:8.4(c) when she made misrepresentations on her client security report. 871 N.W.2d 694, 700 (Iowa 2015). In addition, Nelissen "breached various ethical rules relating to trust accounts by mishandling funds she received." *Id.* at 699. We ultimately concluded that a thirty-day suspension was appropriate. *Id.* at 702. In *Iowa Supreme Court Attorney Disciplinary Board v. Bartley*, we found an attorney violated rule 32:8.4(c) when she made a series of misrepresentations to both her law firm and the court about the status of tax returns, creditor claims, and progress of an estate. 860 N.W.2d 331, 337 (Iowa 2015). The attorney also violated other rules, and we found that she consciously made misrepresentations to cover up her neglect of client cases. *Id.* at 340. We suspended her license to practice law for six months. *Id.*

Weiland himself has previously violated rule 32:3.2. *Weiland*, 862 N.W.2d at 636–37. Weiland failed to comply with court deadlines and ultimately ended with his client's appeal being administratively dismissed. *Id.* at 639. We noted that sanctions for this type of behavior range from public reprimands for isolated incidents to suspensions

lasting several months when the conduct is either egregious or accompanied by other violations, misrepresentation, or aggravating circumstances. *Id.* We found Weiland's conduct was also prejudicial to the administration of justice in violation of rule 32:8.4(d) when he knew his client would be unable to pay for a transcript, took no action to dismiss the appeal, and thereby caused the clerk to unnecessarily prepare and file the dismissal order. *Id.* For this single violation, we publicly reprimanded Weiland. *Id.* at 643.

3. *Mitigating and aggravating factors.* We also consider the presence of any mitigating or aggravating factors when we determine the appropriate sanction. *See Stoller*, 879 N.W.2d at 220–21. Weiland testified that his mother was in and out of the hospital in May, June, and July. His car broke down during this time, and he had issues with city inspectors and his apartment. He also was working on a personal injury case, in addition to a motion for summary judgment, that both took a significant amount of his time. While these circumstances may explain Weiland's behavior, it does not excuse his unethical conduct. *See, e.g.*, *McCarthy*, 722 N.W.2d at 205. One mitigating factor in this case is that Weiland represents mainly low-income individuals in need of legal assistance and charges these clients a reduced rate for his services. *See, e.g.*, *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Powell*, 830 N.W.2d 355, 359 (Iowa 2013). Another mitigating factor is that Weiland expressed remorse for his actions. *See, e.g.*, *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Eslick*, 859 N.W.2d 198, 202 (Iowa 2015).

The prior disciplinary history of an attorney is a significant aggravating factor we must consider when imposing a sanction for violations of our rules. *Parrish*, 801 N.W.2d at 589. This is particularly true when the current rule violations involve the same type of conduct as

the prior conduct subject to discipline. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Cohrt*, 784 N.W.2d 777, 783 (Iowa 2010).

Weiland has received a series of private admonitions, public reprimands, and suspensions. In November 2003, we publicly reprimanded Weiland for violating DR 6–101(A)(1) (competent representation), now rule 32:1.1, when he accepted a probate matter that he knew or should have known he was not competent to handle. In September 2008, Weiland was publicly reprimanded for violating rules 32:1.5(a) (charging unreasonable fees and expenses), 32:8.4(c) (misrepresentation), and 32:8.4(d) (conduct prejudicial to the administration of justice) for conduct involving services to indigent defendants. In January 2014, Weiland's license was temporarily suspended after he failed to respond to an inquiry from the Board. It was reinstated five days later, after he responded. In May 2015, Weiland was publicly reprimanded for violating rules 32:3.2 (expediting litigation) and 32:8.4(d) (conduct prejudicial to the administration of justice). Pertinent to our analysis, Weiland has previously been reprimanded for violating three of the rules we find he violated in handling the Gentry matter—rules 32:3.2, 32:8.4(c), and 32:8.4(d). These current violations demonstrate that Weiland has not learned from his previous disciplinary history. *See, e.g.*, *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Hedgecoth*, 862 N.W.2d 354, 364 (Iowa 2015). Further, given Weiland's previous disciplinary history, he was surely "aware that future similar conduct would warrant a sanction." *Id.* (quoting *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Daggett*, 653 N.W.2d 377, 381 (Iowa 2002)).

We also consider harm to a client an aggravating factor. *See Stoller*, 879 N.W.2d at 221. Gentry's divorce took over one year to be finalized; Weiland testified that a similar action would normally take a

few months. Gentry and Dolan both missed the first pretrial conference, requiring the court to set a new date. Further, we consider vulnerability of the client an aggravating factor. *See, e.g.*, *Ryan*, 863 N.W.2d at 31. Gentry was not a person of means, and Weiland knew she had recently declared bankruptcy. She could not afford the full retainer amount and needed to pay in installments. She testified that she needed the money she originally paid Weiland in order to retain new counsel. Gentry suffered a significant financial hardship when Weiland did not return her $600 retainer until well after new counsel was retained and the divorce was finalized.

Additional aggravating factors include that Weiland is an experienced attorney who has been practicing law for over twenty years. *See, e.g.*, *Bartley*, 860 N.W.2d at 339. Likewise, we consider multiple violations of our rules of professional conduct as an aggravating factor. *Parrish*, 801 N.W.2d at 588.

In light of Weiland's prior disciplinary history, the multiple violations in this current case, his failure to properly communicate with his client, his misrepresentation to his client, and the aggravating factors present here, we conclude that a sixty-day suspension is warranted.

## IV. Conclusion.

For the above reasons, we suspend Weiland's license to practice law with no possibility of reinstatement for sixty days from the filing of this opinion. The suspension shall apply to all facets of the practice of law. *See* Iowa Ct. R. 34.23(3). Weiland must comply with the notification requirements of rule 34.24. *Id.* r. 34.24. Costs are assessed to Weiland. *Id.* r. 36.24(1). Unless the Board objects, Weiland shall be automatically reinstated after the sixty-day suspension period on condition that all costs have been paid. *See id.* r. 34.23(2).

**LICENSE SUSPENDED.**