# In the Iowa Supreme Court

No. 24–1894

Submitted April 16, 2025—Filed  May 16, 2025

**Iowa Supreme Court Attorney Disciplinary Board,**

Appellee,

vs.

**Karmen R. Anderson,**

Appellant.

On appeal from the report of the Iowa Supreme Court Grievance Commission.

In an attorney disciplinary action, the grievance commission recommends an attorney's license to practice law be suspended for multiple violations of the rules of professional conduct. **Attorney Reprimanded.**

McDonald, J., delivered the opinion of the court, in which all justices joined.

Jesse A. Macro, Jr. of Macro Law, LLP, Des Moines, for appellant.

Sarah C. Tupper and Alexis W. Grove, Des Moines, for appellee.

**McDonald, Justice.**

This matter raises the question of the appropriate sanction for an attorney who admittedly failed to comply with appellate deadlines in numerous appeals over a period of almost four years. We conclude a public reprimand is the appropriate remedy here, but we caution that, going forward, an attorney's repeated failure to comply with the appellate deadlines may warrant suspension.

From December 2019 through October 2023, attorney Karmen Anderson failed to act diligently in twenty-four appellate matters. In those twenty-four cases, Anderson missed forty-two appellate filing deadlines, was issued twenty-four default notices by the clerk of the appellate court, and was removed from four of those cases by this court. She paid the accrued $150 penalties assessed for each default, totaling $3,600. Although Anderson's conduct delayed or potentially delayed the disposition of these appeals, none were dismissed due to her lack of diligence.

The Iowa Supreme Court Attorney Disciplinary Board charged Anderson with violating Iowa Rules of Professional Conduct 32:1.3 (requiring lawyers to "act with reasonable diligence and promptness in representing a client"), 32:3.2 ("A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client."), and 32:8.4(d) (prohibiting conduct "prejudicial to the administration of justice"). After a contested hearing, the grievance commission found the Board proved each of the charged violations. The commission recommended that Anderson's license to practice law be suspended for forty-five days and that Anderson complete continuing education related to law practice management as a condition of reinstatement. The commission recommended suspension because, among other things, Anderson had been previously disciplined for similar conduct. Specifically, this court publicly reprimanded

Anderson in September 2019 for the same rule violations after she missed appellate filing deadlines and was issued default notices in eleven different appeals between November 2017 through January 2019.

Anderson timely filed this appeal from the grievance commission's recommendation. Our review is de novo. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Neff*, 5 N.W.3d 296, 303 (Iowa 2024). We give respectful consideration to the commission's findings and recommended sanctions, but we are not bound by them. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Tindal*, 949 N.W.2d 637, 641 (Iowa 2020).

Anderson does not contest that the Board proved each of the alleged violations by a convincing preponderance of the evidence. Nor could she realistically. Anderson's failure to meet forty-two appellate filing deadlines resulting in twenty-four default notices clearly violated rules 32:1.3, 32:3.2, and 32:8.4(d). *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. Eichmann*, 18 N.W.3d 460, 467 (Iowa 2025) ("The same underlying conduct may violate multiple rules of professional conduct at once." (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Lipski*, 14 N.W.3d 751, 757 (Iowa 2024))); *Lipski*, 14 N.W.3d at 757–58 (stating that the failure to comply with appellate filing deadlines can constitute violations of rules 32:1.3 and 32:3.2); *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Fenton*, 12 N.W.3d 352, 362 (Iowa 2024) ("We have concluded that an attorney violates . . . rule [32:8.4(d)] when they miss deadlines."); *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Johnson*, 988 N.W.2d 399, 410–11, 413–14 (Iowa 2023) (finding a violation of rules 32:3.2 and 32:8.4(d) where the lawyer's repeated failure to meet deadlines delayed court proceedings and caused court personnel to expend unnecessary time and energy); *Tindal*, 949 N.W.2d at 642–43 (holding

that an attorney violated rules 32:1.3, 32:3.2, and 32:8.4(d) when he missed filing deadlines resulting in default notices in thirteen appeals).

The parties do contest the appropriate sanction for Anderson's conduct. Anderson argues that a public reprimand is appropriate. However, she requests that if we conclude that suspension of her license is appropriate, the court suspend her license for no more than thirty days instead of the recommended forty-five days. The Board contends that the court should suspend Anderson's license for thirty days and requests that the court require Anderson to complete continuing legal education regarding law practice management as a condition to reinstatement.

"There is no standard sanction for a particular type of misconduct . . . ." *Neff*, 5 N.W.3d at 314 (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Earley*, 729 N.W.2d 437, 443 (Iowa 2007)). We "determine an appropriate sanction based on the particular circumstances of each case." *Earley*, 729 N.W.2d at 443. Relevant considerations include the "nature of the alleged violations, the need for deterrence, protection of the public, maintenance of the reputation of the bar as a whole, and [the attorney's] fitness to continue in the practice of law." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Laing*, 832 N.W.2d 366, 367–68 (Iowa 2013) (alteration in original) (quoting *Comm. on Prof'l Ethics & Conduct of the Iowa State Bar Ass'n v. Kaufman*, 515 N.W.2d 28, 30 (Iowa 1994)). Also relevant are the "aggravating and mitigating circumstances." *Earley*, 729 N.W.2d at 443. Although the appropriate sanction is based on the particular facts and circumstances of each case, we do "seek a degree of consistency in our disciplinary cases with respect to sanctions." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Taylor*, 814 N.W.2d 259, 268 (Iowa 2012). Like cases should be treated alike.

The most analogous case to this one is *Iowa Supreme Court Attorney Disciplinary Board v. Tindal*, 949 N.W.2d 637. Attorney Tindal was privately admonished for lack of diligence in an appeal after he was issued two default notices for missing appellate filing deadlines. *Id.* at 640. In a later disciplinary proceeding, the board again charged Tindal after he was issued twenty-one default notices and penalty assessments in sixteen different appeals, all for missing filing deadlines. *Id.* at 640–41. We publicly reprimanded Tindal for that conduct in 2018. *Id.* at 641. After the 2018 public reprimand, the board charged Tindal with additional rule violations after Tindal missed more appellate filing deadlines and was issued default notices in thirteen more appeals. *Id.* We concluded that Tindal's repeated failure to comply with the appellate deadlines violated rules 32:1.3, 32:3.2, and rule 32:8.4(d). *Id.* at 642–43. On the question of sanctions, we were "troubled that Tindal missed several more appellate deadlines *after* being publicly reprimanded for such conduct." *Id.* at 645. We considered Tindal's prior private admonition and his 2018 public reprimand as aggravating factors. *Id.* We also considered Tindal's twenty years of experience in practicing law as an aggravating factor. *Id.* As for mitigating factors, we noted that Tindal "frequently represent[ed] clients from an underserved part of the community," had "discontinued taking criminal or postconviction appeals," and had "taken corrective measures within his office to better track deadlines and ensure timely filings." *Id.* We concluded that a second public reprimand was appropriate. *Id.* The "lack of harm to Tindal's clients [was] a key mitigating factor." *Id.* We explained that there was a lack of cases "suspending an attorney solely for default notices cured without dismissal of the appeal." *Id.*

As in *Tindal*, there are aggravating circumstances here. Anderson was admitted to practice in 2010, and her fifteen years of experience is an aggravating

factor. *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. Parrish*, 925 N.W.2d 163, 181 (Iowa 2019). Anderson's prior disciplinary history is an aggravating factor. *See id.* This factor is significant here because Anderson's 2019 public reprimand was based on the same or similar conduct at issue in this case. "These current violations demonstrate that [Anderson] has not learned from [her] previous disciplinary history." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Weiland*, 885 N.W.2d 198, 215 (Iowa 2016). While Anderson's prior disciplinary history is significant, it is less significant than Tindal's, who had been privately admonished and publicly reprimanded for missing appellate deadlines prior to being reprimanded a second time. *See Tindal*, 949 N.W.2d at 640–41. Also aggravating here is Anderson's conduct during the disciplinary proceeding. During this disciplinary proceeding, Anderson did not timely file her answer to the Board's amended complaint, did not comply with some of the Board's discovery requests, failed to comply with an order granting the Board's motion to compel discovery, and was sanctioned for failing to comply with the grievance commission's order compelling discovery.

Anderson cites several personal circumstances in support of her claim of mitigation. Specifically, she contends that her practice was stressed and that she missed filing deadlines because of a variety of personal circumstances. *See, e.g., Weiland*, 885 N.W.2d at 215 (considering the attorney's testimony regarding personal stressors, including that his mother was in and out of the hospital); *Comm. on Prof'l Ethics & Conduct of the Iowa State Bar Ass'n v. Wenger*, 469 N.W.2d 678, 680–81 (Iowa 1991) (en banc) (considering the attorney's stressors, including his new responsibility as the primary caretaker of his newborn child because of his wife's hospitalization and his depressive disorder). She was the sole caretaker of her ailing mother, who had been diagnosed with terminal cancer

and who passed away in 2021. Anderson also became ill during the time at issue. *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. West*, 901 N.W.2d 519, 527 (Iowa 2017) ("Personal illnesses . . . do not excuse a lawyer's misconduct but can be mitigating factors and influence our approach to discipline." (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Marks*, 759 N.W.2d 328, 332 (Iowa 2009))). She was twice infected with COVID-19 and had long-term symptoms from those infections, including memory problems and fatigue. She also suffered from appendicitis and had to undergo an appendectomy. Anderson also had familial stressors. She and her husband moved overseas for a period of time due to his work, and she was forced to work remotely. When she returned to the country, she and her husband fostered a young man with Down syndrome who required constant care and supervision. While we have empathy for Anderson's personal circumstances, we conclude that these circumstances are only mildly mitigating here, if at all. The Board persuasively showed that these personal issues did not have a strong correlation, if any, to the deadlines Anderson missed. *See, e.g., Iowa Sup. Ct. Att'y Disciplinary Bd. v. Leitner*, 998 N.W.2d 627, 647 (Iowa 2023) (declining to find mitigation when there was no causal relationship shown between the lawyer's health and the misconduct at issue).

Although Anderson's personal circumstances are only mildly mitigating, if at all, there are other mitigating considerations here. Anderson accepted court-appointed work and did work for low-income clients. *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. Heggen*, 981 N.W.2d 701, 713 (Iowa 2022) (concluding that the attorney's provision of legal services to an "underserved and vulnerable population" was a mitigating factor). She completed pro bono work on a regular basis. *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. Said*, 869 N.W.2d 185, 194–95 (Iowa 2015) (discussing pro bono work). She participated in the expungement

clinic and volunteered to judge moot court. Anderson is active in community service, serving on the board of Tandem Services, a company that places intellectually disabled adults in family homes. *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. Hier*, 937 N.W.2d 309, 318 (Iowa 2020) (discussing community service). The "key mitigating factor" in this case, however, is the lack of prejudice to Anderson's clients. *Tindal*, 949 N.W.2d at 645; *see also Iowa Sup. Ct. Att'y Disciplinary Bd. v. Boles*, 808 N.W.2d 431, 442 (Iowa 2012). None of the appeals at issue were dismissed due to Anderson's conduct. *See Tindal*, 949 N.W.2d at 641. No client filed a complaint with the Board. Anderson paid the penalty assessments associated with the notices of default. Generally, we are reluctant to suspend attorneys "solely for default notices cured without dismissal of the appeal." *Id.* at 645.

After taking account of the aggravating and mitigating circumstances, we conclude that a public reprimand is the appropriate sanction here. "Our primary purpose when imposing sanctions is to protect the public, not to punish the lawyer." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Vandel*, 889 N.W.2d 659, 669 (Iowa 2017). It appears that many of the personal issues Anderson faced during the relevant time were isolated incidents unlikely to recur or incidents that have now been resolved. Anderson has taken corrective action to help prevent her from missing appellate filing deadlines going forward. She has voluntarily reduced her workload. *See Tindal*, 949 N.W.2d at 645. Anderson quit accepting new postconviction-relief cases and limited the number of other new matters she is willing to accept. Her firm implemented staffing changes that moved administrative matters (bill collection, trust account management, etc.) that stole precious time away from Anderson's representation of her clients to administrative staff. *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. Nelson*, 838

N.W.2d 528, 543 (Iowa 2013) (noting that "employing additional administrative help" is a corrective, mitigating measure). Anderson also implemented a new calendaring system to better track appellate deadlines in her pending matters. *See id.* Under these circumstances, we conclude that suspension of Anderson's license is not necessary to protect the public.

While we conclude a second public reprimand is the appropriate sanction consistent with our precedents, we note that missing deadlines is not consistent with the duties required of Iowa lawyers and that, going forward, suspension may be appropriate in future cases involving this type of wholesale neglect of filing deadlines. "[U]sing the appellate clerk's notices of default 'as a private tickler system is unacceptable behavior for an attorney.' " *Tindal*, 949 N.W.2d at 642 (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Weiland*, 862 N.W.2d 627, 642 (Iowa 2015)).

**Attorney Reprimanded.**