# IN THE SUPREME COURT OF IOWA

No. 16–1704

Filed January 27, 2017

Amended April 7, 2017

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**PAMELA ANN VANDEL,**

Respondent.

On review of the report of the Grievance Commission of the Supreme Court of Iowa.

Grievance commission reports respondent committed ethical misconduct and recommends a one-year suspension. **LICENSE SUSPENDED.**

Tara van Brederode and Elizabeth Quinlan, Des Moines, for complainant.

Pamela Ann Vandel, Runnells, pro se.

**WIGGINS, Justice.**

The Iowa Supreme Court Attorney Disciplinary Board brought a complaint against an attorney alleging multiple violations of the Iowa Rules of Professional Conduct. A division of the Grievance Commission of the Supreme Court of Iowa found the respondent's conduct violated the rules and recommended we suspend her license to practice law with no possibility of reinstatement for a period of one year. On appeal, the Board urges us to reaffirm the recommendation. On our de novo review, we find the attorney violated numerous provisions of our rules, which require us to impose sanctions. Accordingly, we suspend the attorney's license to practice law indefinitely with no possibility of reinstatement for a period of six months from the date of filing this decision.

## I. Scope of Review.

We review attorney disciplinary proceedings de novo. Iowa Ct. Rs. 36.21(1), .22(4). The Board must prove ethical violations by a convincing preponderance of the evidence. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Crum*, 861 N.W.2d 595, 599 (Iowa 2015). A convincing preponderance of the evidence is more than the standard in a typical civil case, but less than proof beyond a reasonable doubt. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Netti*, 797 N.W.2d 591, 595 (Iowa 2011). While we respectfully consider the commission's findings and recommendations, they are not binding on us. *Crum*, 861 N.W.2d at 599–600. Upon proof of an ethical violation, we may impose a greater or lesser sanction than the commission recommended. *Netti*, 797 N.W.2d at 595.

Additionally, because the attorney failed to respond to the Board's complaint, we treat the allegations in the complaint as admitted pursuant to Iowa Court Rule 36.7. *Crum*, 861 N.W.2d at 599–600.

## II. Findings of Fact.

Upon on our de novo review of the record and the admitted allegations, we make the following findings of fact. In 1996, Pamela A. Vandel received her license to practice law in Iowa.

On September 28, 2012, Vandel began representing Nichole Phillips in a custody, visitation, and child-support modification case. In 2004, a dissolution decree was entered granting physical custody of a minor child to Nichole, and it provided her former husband, Floyd Phillips, with a specific visitation schedule. On September 20, 2012, attorneys Brian Witherwax and Tyler Johnston filed a petition for modification on behalf of Floyd, claiming a substantial change in circumstances warranted modification as to custody, visitation, and child support. Through his attorneys, Floyd also filed an application for rule to show cause, alleging Nichole placed the minor child on ADHD medication against medical advice and without informing Floyd, which was contrary to the terms of the decree.

After Vandel entered her appearance on behalf of Nichole, she filed answers and counterclaims to Floyd's petition for modification and application for rule to show cause. On April 10, 2013, Floyd's attorneys filed a motion to withdraw. The court held a hearing on April 15 and granted Nichole's request for designation of expert witness and addressed Floyd's failure to obtain a psychological evaluation as previously ordered. After the hearing on April 15, Vandel advised Nichole to deny Floyd further visitation and filed a motion to suspend visitation. Based on Vandel's advice, Nichole began denying Floyd visitation on April 17. Thereafter on April 22, Floyd's attorneys filed an application for a rule to show cause asserting Nichole denied Floyd visitation on April 17. That application along with Witherwax's and Johnston's motion to withdraw,

and the motion to suspend visitation were scheduled for hearing on May 9 at 1:30 p.m.

On the morning of May 9, Vandel called Floyd's attorney, Tyler Johnston, and told him the hospital notified her she needed to go in for a blood transfusion that day and asked if he would agree to a continuance. After Johnston agreed to the continuance, Vandel called Judge Gunderson and indicated she was medically incapable of attending the hearing. Vandel followed up with an email expressing her gratitude to Judge Gunderson and Johnston for understanding her need for the transfusion. Due to Vandel's representations concerning her need for a blood transfusion, the court continued the hearing to the date of trial on May 20. Despite her representations, Vandel did not receive a blood transfusion on May 9.

On May 13, Floyd, through his new attorney Jason Springer, filed an application for rule to show cause alleging that Nichole, based on the advice of Vandel, had denied Floyd visitation nine times between April 17 and May 11, in violation of the dissolution decree.

The modification trial occurred May 20 through May 24 before Judge Blane. Prior to the start of the trial, counsel for both parties met with Judge Blane and agreed the court would consider, in addition to modification, Nichole's counterclaim filed on October 1, 2012; Floyd's application for rule to show cause filed on April 22, 2013; and Floyd's application for rule to show cause filed on May 13. In order for the court to hear the application for rule to show cause filed on May 13, Vandel waived Nichole's right to notice without consulting her. Nichole found out about the second application for rule to show cause on the third day of trial when Vandel showed her the application during a break.

During the modification trial, Nichole testified that Vandel told her three days before the trial she was going to withdraw as counsel on the first day of trial if Nichole did not pay her an additional $10,000. When Nichole told Vandel she was unable to pay $10,000, Vandel lowered the amount to $5000. Although Nichole did not make an additional payment, Vandel appeared for trial and did not file a motion to withdraw. However, throughout the trial, Vandel continued to tell Nichole that she was going to withdraw if she did not make an additional payment. Nichole explained to Judge Blane that Vandel's threats to withdraw put her "under extreme stress," and she felt like she was being "harassed . . . badgered, and . . . threatened."

Additionally, on the first day of trial, Vandel presented Nichole with documents to sign in the form of a mortgage with a promissory note, attorney fee lien, assignment of income, judgment by confession, and assignment of wages. Vandel falsely told Judge Blane she did not present any documents for Nichole to sign during the trial. Further, when Vandel threatened to withdraw if she did not receive an additional payment, Vandel did not inform Nichole of the likelihood that the judge would grant or deny such a motion.

On May 28, Judge Blane found Vandel "guilty [beyond a reasonable doubt] of nine (9) counts of contempt of court by willfully counseling, thereby aiding and abetting the violation of the Court's Decree of May 19, 2004, pursuant to Iowa Code section 665.2(3)."[1]

---

[1]Vandel filed a writ of certiorari challenging the district court's ruling. The court of appeals sustained her writ, finding substantial evidence did not support the district court's finding of contempt as to Vandel. However, we are unable to consider the court of appeals decision because Vandel failed to answer the complaint filed by the Board; thus, admitting all the allegations of the Board for purposes of this disciplinary proceeding.

Judge Blane also filed a complaint with the Board against Vandel. On June 6, Nichole filed a complaint with the Board against Vandel. In response to Nichole's complaint, Vandel wrote a letter to the Board on July 2, continuing to claim she needed medical treatment on May 9. In Vandel's appellate brief filed on April 8, 2014, she again asserted that she was unavailable for the hearing on May 9, 2013, because she "had to go in for a blood transfusion." However, in a letter to the Board's investigator on April 11, 2014, Vandel stated there were no medical records showing she had a blood transfusion on May 9, 2013.

During the period in which Vandel represented Nichole, she maintained an Interest on Lawyers Trust Account (IOLTA). Between September 2012 and March 2013, Nichole made payments to Vandel of $3000, $3894, $4080.30, $5000, and $8000. They did not have a written fee agreement. The only information Nichole had regarding the scope of Vandel's representation was that she would be charged $295 per hour for legal services.

As part of its investigation into the complaints against Vandel, the Board discovered Vandel did not deposit any of the payments by Nichole into her trust account, did not maintain a check register, did not perform monthly reconciliations of her trust account, and did not maintain client ledgers. However, Vandel falsely certified that she had deposited all retainers into her trust account and performed reconciliations of trust account balances with bank statement balances and client ledger balances on a monthly basis when she answered the 2013 and 2014 Iowa Supreme Court Client Security Commission Questionnaires.

On May 3, 2016, the Board filed a complaint alleging Vandel engaged in multiple violations of the Iowa Rules of Professional Conduct, concerning false statements to a tribunal, conduct prejudicial to the

administration of justice, failure to maintain a trust account, dishonesty, and misrepresentation.

After Vandel failed to file an answer within the specified time, on June 16, the Board filed a motion to invoke Iowa Court Rule 36.7, asking the commission to deem the allegations in the complaint admitted. On June 23, Vandel filed a resistance to the motion, asserting she planned to hand-deliver her answer to the commission clerk on June 24. However, Vandel never filed the promised answer. The commission waited until July 5, and on that date held the allegations in the complaint admitted. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Conroy*, 795 N.W.2d 502, 506 (Iowa 2011) ("[T]he allegations of an ethics complaint are deemed admitted if the respondent fails to answer within the specified time."); *accord* Iowa Ct. R. 36.7. Vandel did not request additional time to file an answer, nor did she show good cause for her failure to file a timely answer. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Attorney Doe No. 819*, 888 N.W.2d 248, 259 (Iowa 2016) ("Respondents in disciplinary proceedings are admonished that the failure to timely respond to the Board's complaint results in admission of the allegations that may be unraveled only if the respondent shows good cause for the delay."). Therefore, this matter proceeded to hearing solely on the issue of determining the appropriate sanction.

At the hearing, Vandel asked the commission to take into consideration the fact that she does not intend to practice law in the future and her history of providing pro bono legal services throughout her career. Following the hearing, the commission recommended we suspend Vandel's license to practice law with no possibility of reinstatement for a period of one year.

### III. Violations.

**A. Rule 32:1.4(b).** Rule 32:1.4(b) provides "[a] lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." Iowa R. Prof'l Conduct 32:1.4(b). For a client to effectively participate in the representation, reasonable communication between the lawyer and client is necessary. *Id.* r. 32:1.4 cmt. 1.

Vandel violated this rule when she repeatedly told Nichole she was going to withdraw if Nichole did not make an additional payment to her. Vandel did not explain to Nichole that in order to withdraw she would have to make a motion to the court to do so. Further, she did not explain the likelihood that a judge would grant such a motion on the first day of trial or during the trial. Vandel's threats to withdraw caused Nichole extreme stress, and she felt harassed and badgered. Accordingly, Vandel's failure to fully explain the circumstances left Nichole unable to make an informed decision regarding Vandel's representation and effectively prepare for and participate in the trial. Thus, Vandel violated rule 32:1.4(b).

**B. Rule 32:3.3(a)(1).** Rule 32:3.3(a)(1) prohibits a lawyer from knowingly making "a false statement of fact . . . to a tribunal." *Id.* 32:3.3(a)(1). The word knowingly requires an attorney to have "actual knowledge of the fact in question." *Id.* r. 32:1.0(f). "We will not infer an attorney made a misrepresentation knowingly simply because the misrepresentation occurred." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Barnhill,* 847 N.W.2d 466, 486 (Iowa 2014).

Vandel knowingly made a false statement of fact to a tribunal when she told Judge Gunderson that she was medically incapable of attending the hearing on May 9 due to her need for a blood transfusion. During

the modification trial before Judge Blane, she continued to claim she had a blood transfusion. Finally, in her statement of facts to the court of appeals, Vandel asserted that she was unavailable for the hearing on May 9 because she had to go in for a blood transfusion. Despite her representations to these tribunals, Vandel has no medical records showing she had a blood transfusion on May 9. We find Vandel made these statements knowingly due to the number of times she repeated it to various persons and entities.

Additionally, Vandel made another false statement to Judge Blane during the modification trial when she maintained that she never presented Nichole with any documents to sign in the form of a mortgage with a promissory note, attorney fee lien, assignment of income, judgment by confession, and assignment of wages. We find she also made this statement knowingly.

Accordingly, Vandel knowingly made several false statements to tribunals and therefore violated rule 32:3.3(a)(1).

**C. Rule 32:4.1(a).** This rule prohibits a lawyer from knowingly making "a false statement of material fact . . . to a third person." Iowa R. Prof'l Conduct 32:4.1(a). An attorney can violate this rule by making a false statement of material fact to opposing counsel. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Barnhill*, 885 N.W.2d 408, 421 (Iowa 2016).

Vandel violated this rule when she knowingly told her opposing counsel, Johnston, that she needed to go in for a blood transfusion on May 9 and asked if he would agree to a continuance. Despite her representation to Johnston, Vandel did not receive a blood transfusion on May 9. We find at the time she made the statement she knew it was false.

**D. Rule 32:8.4(d).** A lawyer violates rule 32:8.4(d) when a lawyer engages "in conduct prejudicial to the administration of justice." Iowa R. Prof'l Conduct 32:8.4(d). We have said that "there is no typical form of conduct that prejudices the administration of justice," but "actions that have commonly been held to violate this disciplinary rule have hampered 'the efficient and proper operation of the courts or of ancillary systems upon which the courts rely.' " *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Templeton*, 784 N.W.2d 761, 768 (Iowa 2010) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Howe*, 706 N.W.2d 360, 373 (Iowa 2005)).

We have consistently held that an attorney violates rule 32:8.4(d) when the "misconduct results in additional court proceedings or causes court proceedings to be delayed or dismissed." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Dolezal*, 841 N.W.2d 114, 124 (Iowa 2013) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Rhinehart,* 827 N.W.2d 169, 180 (Iowa 2013)).

Based on Vandel's false statement that she needed a blood transfusion, the court granted her request for a continuance of the May 9 hearing. Although opposing counsel Johnston agreed to the continuance because of Vandel's "medical emergency," he noted in an email to Judge Gunderson and Vandel that the continuance would prejudice Floyd because his application for rule to show cause would not get resolved until a later date. Instead of the court considering his application on May 9, the court's consideration of the application was delayed almost two weeks until the trial on May 20. Because Vandel's false statement caused a delay in the proceedings, she violated rule 32:8.4(d).

**E. Rule 32:3.4(c).** Rule 32:3.4(c) provides "[a] lawyer shall not . . . knowingly disobey an obligation under the rules of a tribunal except

for an open refusal based on an assertion that no valid obligation exists." Iowa R. Prof'l Conduct 32:3.4(c).

The Board alleged, after the hearing on April 15, Vandel advised Nichole to deny Floyd further visitation, and based on Vandel's advice, Nichole began denying Floyd visitation on April 17, in violation of the 2004 dissolution decree. Vandel admitted this allegation in this disciplinary proceeding because she failed to answer the complaint.

Vandel knew that Nichole was obligated to follow the visitation order in the dissolution decree unless the court granted her motion to suspend Floyd's visitation. Because Vandel knowingly disobeyed the visitation order in the dissolution decree and advised her client to disregard the order, she violated rule 32:3.4(c).

**F. Rule 32:1.3.** Rule 32:1.3 states "[a] lawyer shall act with reasonable diligence and promptness in representing a client." *Id.* r. 32:1.3. "This rule requires an attorney to handle a client matter in a 'reasonably timely manner.'" *Netti,* 797 N.W.2d at 598 (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Johnson,* 792 N.W.2d 674, 678 (Iowa 2010)). We have recognized violations "when an attorney fails to appear at scheduled court proceedings, does not make the proper filings, or is slow to act on matters." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Nelson,* 838 N.W.2d 528, 537 (Iowa 2013); *see also Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ackerman,* 786 N.W.2d 491, 495 (Iowa 2010) (holding the attorney violated rule 32:1.3 for the dilatory handling of estates, despite receiving notices and inquiries from beneficiaries); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Hauser,* 782 N.W.2d 147, 150–53 (Iowa 2010) (finding the attorney violated rule 32:1.3 by failing to make filings and not appearing at the scheduled trial).

The Board contends Vandel violated rule 32:1.3 when she waived Nichole's right to notice of Floyd's application for rule to show cause filed on May 13, without obtaining her consent and without informing Nichole until the third day of trial. Although these facts are undisputed, we find they are unrelated to reasonable diligence or promptness in Vandel's representation of Nichole. While Vandel's conduct likely violated a rule of professional conduct, we do not find rule 32:1.3 applies.[2] Thus, the Board has failed to prove a violation of rule 32:1.3.

**G. Rule 32:1.5(b).** This rule requires a lawyer to communicate with the client, preferably in writing, regarding "[t]he scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible." Iowa R. Prof'l Conduct 32:1.5(b). An

---

[2]*See, e.g.*, Iowa R. Prof'l Conduct 32:1.4. Rule 32:1.4(a) provides a lawyer must

(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent . . . is required by these rules;

(2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;

(3) keep the client reasonably informed about the status of the matter;

(4) promptly comply with reasonable requests for information; and

(5) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Iowa Rules of Professional Conduct or other law.

Iowa R. Prof'l Conduct 32:1.4(a). Additionally, rule 32:1.4(b) states "[a] lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." *Id.* r. 32:1.4(b). When an attorney neglects to keep a client informed about the status of the case, it is a violation of rule 32:1.4. *Nelson*, 838 N.W.2d at 537.

attorney's failure to do so violates rule 32:1.5(b). *Nelson*, 838 N.W.2d at 538. Further,

> a lawyer should not enter into an agreement whereby services are to be provided only up to a stated amount when it is foreseeable that more extensive services probably will be required, unless the situation is adequately explained to the client. Otherwise, the client might have to bargain for further assistance in the midst of a proceeding or transaction.

Iowa R. Prof'l Conduct 32:1.5 cmt. 5.

There was no written fee agreement between Vandel and Nichole. Vandel did not communicate to Nichole the scope of her representation other than to tell Nichole she charged $295 per hour for legal services. When Vandel demanded $10,000 from Nichole three days before trial, she referenced a nonexistent fee contract. Nichole, on the other hand, had an email from April 2013, in which she referred to Vandel's agreement to accept $100-per-month payments.

It is worth noting that the Board previously admonished Vandel for similar conduct in 2007, when four days prior to a hearing she demanded a client pay her an additional $3500 or she would not represent him further. The Board found her conduct violated rule 32:1.16(b)(5) because the fee contract did not unilaterally allow Vandel to require an additional retainer. Here, Vandel did not adequately explain to Nichole the scope of her representation or that she would provide her services only up to a stated amount, and therefore, she violated rule 32:1.5(b).

**H. Rules 32:1.15(a), 32:1.15(c), and 32:1.15(f).** We address these alleged violations together because they apply to the safekeeping of a client's property, including retainer fees. Rule 32:1.15 provides, in relevant part,

(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of six years after termination of the representation.

. . . .

(c) A lawyer shall deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred.

. . . .

(f) All client trust accounts shall be governed by chapter 45 of the Iowa Court Rules.

*Id.* r. 32:1.15. This rule incorporates Iowa Court Rule 45.7, which directs how lawyers are to handle retainers. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. McCarthy*, 814 N.W.2d 596, 607 (Iowa 2012). Rule 45.7(3) "requires a lawyer to deposit a retainer into a trust account and withdraw payments as the lawyer earns the fee or incurs the expense." *Id.*; Iowa Ct. R. 45.7(3). It "also requires a lawyer, at the time of a withdrawal of a fee or expense, to notify his client in writing of the time, amount, and purpose of the withdrawal and provide a complete accounting." *McCarthy*, 814 N.W.2d at 607; Iowa Ct. R. 45.7(4).

Vandel did not deposit any of Nichole's payments into her trust account. Because she did not deposit any of the payments into the trust account, Vandel did not withdraw fees and expenses as she earned them, nor did she provide Nichole with contemporaneous notices. Therefore, Vandel violated rules 32:1.15(a), 32:1.15(c), and 32:1.15(f).

**I. Rule 32:8.4(c).** This rule is violated when a lawyer engages "in conduct involving dishonesty, fraud, deceit, or misrepresentation." Iowa

R. Prof'l Conduct 32:8.4(c). We "require some level of scienter that is greater than negligence to find a violation of rule 32:8.4(c)." *Netti*, 797 N.W.2d at 605. We have previously found an attorney "engaged in knowing dishonesty" when he falsely represented that he regularly reconciled his client trust account when he answered the Iowa Supreme Court Client Security 2010 Combined Statement. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Morris*, 847 N.W.2d 428, 435 (Iowa 2014).

During the hearing, Vandel stated she is not good at managing money and admitted to these trust account violations. We find Vandel engaged in knowing dishonesty when she falsely answered the 2013 and 2014 Client Security Commission Questionnaires. Particularly, she falsely represented that she deposited all retainers into her trust account and that she performed monthly reconciliations of trust account balances. Thus, Vandel violated rule 32:8.4(c).

## IV. Sanctions.

In determining the appropriate sanction a lawyer must face for misconduct,

> we consider the nature of the violations, protection of the public, deterrence of similar misconduct by others, the lawyer's fitness to practice, and the court's duty to uphold the integrity of the profession in the eyes of the public. We also consider aggravating and mitigating circumstances present in the disciplinary action.

*Nelson*, 838 N.W.2d at 542 (quoting *Templeton*, 784 N.W.2d at 769–70). Our primary purpose when imposing sanctions is to protect the public, not to punish the lawyer. *Id.* However, when an attorney violates multiple conduct rules, we may impose enhanced sanctions. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Alexander*, 574 N.W.2d 322, 327 (Iowa 1998). Further, when "considering the importance of honesty

to our profession, we have stated that misrepresentation by a lawyer . . . generally results in a 'lengthy suspension.' " *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Gottschalk*, 729 N.W.2d 812, 821 (Iowa 2007) (quoting *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Grotewold*, 642 N.W.2d 288, 294 (Iowa 2002)).

In Vandel's case, there are several aggravating factors we must consider when determining the appropriate sanction. First, an aggravating factor is Vandel's prior discipline. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Baldwin*, 857 N.W.2d 195, 214 (Iowa 2014). We consider both prior admonitions and prior public discipline. *Id.* Additionally, "[p]rior misconduct is more suggestive of increased sanctions when it involves the same type of conduct as the conduct currently subject to discipline." *Id.*

The Board has previously admonished Vandel on two occasions. In 2004, the Board admonished her for representing both parties in a marriage dissolution matter. In 2007, the Board admonished her for similar conduct to the conduct in this case when she demanded a client pay an additional retainer for her continued representation four days before a hearing when the fee contract did not allow her to unilaterally require an additional retainer. In 2012, we publicly reprimanded Vandel for similar trust account violations.

Second, we consider substantial experience in the practice of law an aggravating factor affecting our determination. *Morris*, 847 N.W.2d at 436. Vandel has substantial experience as she has been practicing law in Iowa for twenty years.

Third, it is significant that Vandel's actions exposed her client to harm. *See Netti*, 797 N.W.2d at 606–07. Vandel's repeated threats to

withdraw prior to and during the trial caused Nichole extreme stress and prevented her from effectively participating in the trial.

Finally, an "attorney's failure to appreciate the wrongfulness of his or her actions is an aggravating circumstance." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Tofflemire*, 689 N.W.2d 83, 93 (Iowa 2004). On the other hand, "[a] mitigating factor is the attorney's recognition of some wrongdoing." *Id.* During the commission's sanctions hearing, Vandel said she is not good at managing money and admitted to trust account violations. However, she never acknowledged that she repeatedly made false statements to the trial court, opposing counsel, the court of appeals, and the Board. Further, she adamantly denied her conduct caused any harm to Nichole.

We also take into consideration the mitigating factors present in this case. First, we acknowledge that Vandel was hospitalized for a severe illness near the time she requested a continuance for the hearing on May 9. Although Vandel did not have a blood transfusion on May 9, she was admitted to the hospital on May 7 for severe illness and pain. She left the hospital on the morning of May 8, despite being counseled against leaving because of the severity of her illness. "While personal illness will not excuse an attorney's misconduct, such illnesses may influence our approach to discipline." *Netti*, 797 N.W.2d at 606.

Second, we note Vandel has provided substantial pro bono legal work throughout her career and routinely performs work for low-income clients. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. McGinness*, 844 N.W.2d 456, 467 (Iowa 2014) (stating community service is a mitigating factor).

In similar cases involving misrepresentations compounded with other misconduct, we have suspended an attorney's license for as short

as six months to as long as two years. In *McGinness*, we imposed a six-month suspension for making false statements to a tribunal; conduct that involved dishonesty, fraud, deceit, or misrepresentation; and conduct prejudicial to the administration of justice. *Id.* at 462–63, 467.

In *Morris*, we imposed a six-month suspension on an attorney who falsely answered questions in the Client Security Combined Statement, had substantially and repeatedly failed to maintain a trust account, had twenty-five years of experience, and had three prior suspensions. 847 N.W.2d at 436–37.

In *Iowa Supreme Court Attorney Disciplinary Board v. Hearity*, we suspended an attorney for one year for making a false statement to the court in addition to neglect, charging unreasonable fees, failing to properly terminate representation, failing to respond to the board, and practicing law without a license. 812 N.W.2d 614, 618–21, 623 (Iowa 2012).

In *Netti*, we suspended an attorney's license for two years for multiple violations, including misrepresentations to the court, incompetent representation, conflict of interest, failure to properly communicate with clients, failure to maintain a trust account, taking fees without accounting for his time, failure to cooperate with the Board, and his unauthorized practice of law. 797 N.W.2d at 607.

In light of Vandel's multiple violations, the aggravating factors, and the mitigating factors, we conclude a suspension of six months is warranted in this case.

### V. Disposition.

We suspend Vandel's license to practice law in Iowa with no possibility of reinstatement for six months from the date of this opinion. This suspension applies to all facets of the practice of law. *See* Iowa Ct.

R. 34.23(3). Vandel must also comply with the requirements of Iowa Court Rule 34.24 with respect to the notification of clients and opposing counsel. To establish her eligibility for reinstatement, Vandel must file an application for reinstatement meeting all applicable requirements of Iowa Court Rule 34.25. We tax the costs of this action to Vandel pursuant to Iowa Court Rule 36.24(1).

**LICENSE SUSPENDED.**