# IN THE SUPREME COURT OF IOWA

No. 23–0549

Submitted October 11, 2023—Filed November 9, 2023

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

   Appellee,

vs.

**SCOTT ALDEN SOBEL,**

   Appellant.

---

On appeal from the report of the Iowa Supreme Court Grievance Commission.

In an attorney disciplinary action, the grievance commission recommends a thirty-day suspension of the attorney's law license based on violations of our attorney ethics rules. **LICENSE SUSPENDED.**

Christensen, C.J., delivered the opinion of the court, in which all justices joined.

Tara van Brederode, Alexis W. Grove, and Allison A. Schmidt, Des Moines, for appellee.

David L. Brown of Hansen, McClintock & Riley, Des Moines, for appellant.

**CHRISTENSEN, Chief Justice.**

The Iowa Supreme Court Attorney Disciplinary Board charged an Iowa attorney with violations of the Iowa Rules of Professional Conduct after he neglected two client matters. The Iowa Supreme Court Grievance Commission found various violations of our ethics rules and recommended the attorney's license be suspended for thirty days. The attorney challenges the commission's recommended sanction, arguing that his conduct did not violate any ethics rules and the complaint should be dismissed. Upon our de novo review of the record, we suspend the attorney's license for thirty days.

## I. Background Facts and Proceedings.

Scott Sobel has been licensed to practice law in Iowa since 1983. In the nearly forty years he has practiced, Sobel has incurred numerous admonitions and reprimands for his violations of our ethical rules of conduct. In 2002, Sobel was privately admonished for a breach of confidentiality in violation of Iowa Rule of Professional Conduct 32:1.6.[1] In 2009, Sobel was privately admonished three times for intemperate and condescending behavior in violation of rules 32:1.6(a) and 32:1.4.

In 2010, Sobel was publicly reprimanded for failing to render a proper written accounting for legal services when he withdrew fees from a retainer and did not notify the client of such withdrawal in violation of rule 32:1.5.[2] In 2017, Sobel was publicly reprimanded for neglecting to prosecute six appeals due to various health complications rather than withdrawing as counsel in violation of

---

[1]At the time of Sobel's conduct that led to the 2002 private admonishment, the relevant rule, which was replaced by rule 32:1.6, was Canon 4 of the Iowa Code of Professional Responsibility.

[2]The relevant rule at the time of Sobel's conduct, which was replaced by rule 32:1.5, was DR 2–102(B)(4) of the Iowa Code of Professional Responsibility.

rules 32:1.3, 32:1.4(a)(2)–(3), 32:1.16(a)(2), 32:3.2, 32:3.4, and 32:8.4(d). In 2021, Sobel was privately admonished for violating rule 32:1.4(a)(2)–(4).

Sobel received another private admonishment in 2021 for violating rules 32:1.2(d), 32:3.3, and 32:8.4(d). In 2022, Sobel was publicly reprimanded for violating rule 32:1.4 for failing to respond to his client's requests to communicate that led to the client being in jail for sixty-four days before having an opportunity to speak to Sobel, and for failing to speak to another client prior to her probation revocation hearing and intentionally ignoring her phone calls.

The alleged violations in this case stem from Sobel's court-appointed representation of Mario Goodson in a sentencing hearing (the Goodson Matter) and Sobel's representation of coplaintiffs Samir Golubovic and Ramiza Dervisedic (the Golubovic Matter). On September 14, 2021, Sobel was appointed to represent Goodson regarding his resentencing in a criminal case. Prior to Sobel's appointment, the sentencing hearing had been set for October 4. On October 3, Sobel attempted to read the presentence investigation report (PSI) to prepare for the hearing and realized he could not access the PSI. Sobel neither contacted anyone to resolve the technical issues nor alerted the judge of his inability to access the PSI before the start of the proceeding. It was not until after the proceeding had begun, and the judge asked both parties if they had reviewed the PSI, that Sobel revealed he had not been able to access it. The judge ordered a brief break to allow Sobel and Goodson an opportunity to review the PSI. The hearing proceeded after the break, but Goodson indicated he did not have an adequate opportunity to review the PSI, so the judge ordered a second break. Following the second break, Goodson was sentenced. Additionally, Sobel did not communicate with Goodson in any manner until the morning of the hearing on October 4; however, he did communicate with Goodson's mother before the hearing.

On February 23, 2021, Sobel filed a complaint on behalf of his clients in the Golubovic Matter. Sobel did not obtain service of process within the required ninety days. *See* Iowa R. Civ. P. 1.302(5). In response, the district court set a hearing for June 23, noting that if the plaintiff failed to appear and proceed at the hearing, the case would be dismissed. Sobel did not attend the June 23 hearing. The district court then rescheduled the hearing for July 9, again noting that if the plaintiff failed to appear the matter would be dismissed. Sobel served the defendant in the Golubovic Matter on June 28, 125 days after the petition had been filed. The July 9 hearing was then canceled. The defendant filed a preanswer motion to dismiss on August 2. Sobel neither resisted the motion nor sought a continuance or extension to respond. On August 16, the court granted the motion to dismiss.

On August 17, Sobel filed a motion to set aside the dismissal and set the matter for hearing. In the motion, Sobel indicated his failure to respond was due to being sick with "bronchitis and ear issues," difficulties with "diabetes management," and needing his "rescue inhaler on multiple occasions." He further indicated he was in quarantine after being exposed to COVID-19. In explaining why he did not effectuate timely service, Sobel stated he had undergone "scopes and biopsies and dilations to determine difficulty swallowing and motility of the digestive tract" and that he had contracted two infections after the procedures, all of which took two and a half months to complete. Sobel orally suggested to his clients that they seek other counsel, but Sobel took no further steps to withdraw from representation in the Golubovic Matter. On October 11, the district court set aside the dismissal for "good cause attributable to excusable neglect."

The Iowa Supreme Court Attorney Disciplinary Board (the Board) filed a two-count complaint alleging Sobel violated several of the Iowa Rules of Professional Conduct. Count I alleges that Sobel violated Iowa Rules of Professional

Conduct 32:1.3 and 32:1.4(a)(3) in connection with his representation in the Goodson Matter. Count II alleges that Sobel violated Iowa Rules of Professional Conduct 32:1.16(a)(2), 32:3.2, and 32:8.4(d) in connection with his representation in the Golubovic Matter. Sobel filed an answer and denied that his conduct violated the rules of professional conduct. The parties entered into a partial stipulation of facts on December 20 and waived formal hearing.

In Sobel's poststipulation brief, he argued that the district court in the Golubovic Matter had set aside the complaints against him; therefore, issue preclusion precluded a finding that he violated the rules. The Board filed an objection, arguing that Sobel's failure to provide written notice of his intent to invoke preclusion pursuant to Iowa Court Rule 36.17(4)(*c*) prevents him from invoking it in his poststipulation brief. In response, Sobel argued that rule 36.17(4) was an evidentiary rule. He characterized the invocation of issue preclusion as presenting a legal argument rather than putting on evidence. Therefore, Sobel argued that Iowa Court Rule 36.17(4) was not applicable.

The commission determined that Iowa Court Rule 36.17 was applicable to the legal arguments of the parties even though the matter was submitted to the commission on the basis of a stipulation rather than a formal hearing. The language of Iowa Court Rule 36.17(4)(*c*) requires written notice of an intent to invoke issue preclusion within ten days of the hearing. Because the formal hearing had been waived, the commission found Iowa Court Rule 36.17(4)(*c*) inapplicable. However, the commission determined that Sobel had not satisfied Iowa Court Rule 36.17(4)(*a*)–(*b*), which must be satisfied to properly invoke issue preclusion. Therefore, the commission found that issue preclusion could not be utilized as a basis for determining the Board failed to meet its burden of proof in the disciplinary matter.

In the Goodson Matter, the commission found Sobel violated both rules of professional conduct alleged in the Board's complaint. First, it found he violated rule 32:1.3, which requires a lawyer to act with reasonable diligence and promptness in representing a client, when he failed to review the PSI, remedy his technical difficulties, or to communicate with Goodson prior to the hearing. Second, the commission concluded Sobel violated rule 32:1.4(a)(3), which requires a lawyer to keep their client reasonably informed of the matter, by not communicating with Goodson or reviewing the PSI prior to the hearing.

In the Golubovic Matter, the commission found Sobel violated all three rules of professional conduct alleged in the Board's complaint. First, it determined Sobel violated rule 32:1.16(a)(2), which requires a lawyer to withdraw from representation if a "physical or mental condition materially impairs the lawyer's ability to represent the client," when Sobel did not withdraw as counsel despite his acknowledgment that his physical health conditions were the cause of his mistakes in the Golubovic Matter. Iowa R. of Prof'l Conduct. 32:1.16(a)(2). Second, the commission found he violated rule 32:3.2, which requires a lawyer "make reasonable efforts to expedite litigation," when his failures in the Golubovic Matter caused the petition to not advance from February 23, 2021, until October 11, 2021. *Id.* r. 32:3.2. Finally, the commission concluded Sobel violated rule 32:8.4(d), which prohibits a lawyer from engaging "in conduct that is prejudicial to the administration of justice," when Sobel's actions resulted in the district court setting and presiding over additional proceedings that would have been unnecessary had Sobel timely obtained service of process. *Id.* r. 32:8.4(d).

In reaching its recommended sanction, the commission recognized Sobel's health issues, assistance to individuals in underserved portions of the community, volunteer service, cooperation with the Board's investigation, and that his

clients suffered relatively minor harms as mitigating factors. Additionally, the commission found Sobel's substantial experience in the practice of law, pattern of misconduct, and prior disciplinary history as aggravating factors. The commission found Sobel's prior disciplinary history to be particularly aggravating, as he had previously been reprimanded for violations of two of the five rules implicated in this disciplinary matter. The commission recommended a thirty-day suspension of Sobel's law license.

## II. Standard of Review.

We review attorney disciplinary proceedings de novo. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Johnson*, 884 N.W.2d 772, 776 (Iowa 2016). The Board is required to "prove its allegations of attorney misconduct by a convincing preponderance of the evidence," which is "more demanding than proof by preponderance of the evidence, but less demanding than proof beyond a reasonable doubt." *Id.* at 777 (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Ouderkirk*, 845 N.W.2d 31, 33 (Iowa 2014)). "Factual stipulations bind the parties, and we interpret those stipulations 'with reference to their subject matter and in light of the surrounding circumstances and the whole record.'" *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Kieffer-Garrison*, 951 N.W.2d 29, 36 (Iowa 2020) (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Nine*, 920 N.W.2d 825, 828 (Iowa 2018)). We respectfully consider the findings and recommendations of the commission, but we are not bound by them. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Janssen*, 981 N.W.2d 1, 6 (Iowa 2022). We can "impose a greater or lesser sanction than what the commission has recommended upon proof of an ethical violation." *Id.* (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Noel*, 923 N.W.2d 575, 582 (Iowa 2019)).

### III. Analysis.

### A. Goodson Matter.

1. *Failure to act with reasonable diligence.* Rule 32:1.3 states, "A lawyer shall act with reasonable diligence and promptness in representing a client." Iowa R. of Prof'l Conduct 32:1.3. An attorney violates rule 32:1.3 when the attorney neglects a client matter. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Weiland*, 862 N.W.2d 627, 635 (Iowa 2015) (citing *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Dolezal*, 796 N.W.2d 910, 915 (Iowa 2011)). One generally does not commit neglect by missing a single deadline or by engaging in ordinary negligence. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Blessum*, 861 N.W.2d 575, 585 (Iowa 2015) (citing *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Taylor*, 814 N.W.2d 259, 265 (Iowa 2012)). Rather, neglect involves "a conscious disregard for a lawyer's responsibility to his or her client." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Conroy*, 845 N.W.2d 59, 64 (Iowa 2014) (citing Iowa Sup. Ct. *Bd. of Prof'l Ethics & Conduct v. Moorman*, 683 N.W.2d 549, 551 (Iowa 2004)); *see also Blessum*, 861 N.W.2d at 585. Further, an attorney is required to attend to matters entrusted to the attorney's care in a reasonably timely manner. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Barnhill*, 847 N.W.2d 466, 483 (Iowa 2014) (citing *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Ackerman*, 786 N.W.2d 491, 495 (Iowa 2010)) ("We have found a violation of this rule when an attorney was slow to act on matters or did not keep clients properly informed on their cases."); *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Carpenter*, 781 N.W.2d 263, 268 (Iowa 2010). "It is not a defense . . . that the client may be indifferent to the attorney's lack of diligence." *Dolezal*, 796 N.W.2d at 915.

Sobel was appointed to represent Goodson on September 14, 2021. At the time he was appointed, a sentencing hearing had already been scheduled for October 4. Sobel had twenty days to review the PSI, yet he did not attempt to

review it until the night before the hearing, at which point he learned he could not access it. Despite having several hours before the hearing to seek assistance in accessing the PSI, Sobel made no such efforts to remedy his technical difficulties. Instead, he waited to alert anyone that he had not been able to access the PSI until the hearing had begun and he was asked if he had reviewed the PSI.

Having been an attorney for nearly forty years and serving as counsel in many criminal matters, Sobel knew the importance of reviewing the PSI before the sentencing hearing. By not attempting to fix the technical issues or alert the court of his difficulties prior to the start of the hearing, Sobel consciously disregarded the responsibility he owed to Goodson. Further, by waiting until the night before the hearing to access the PSI, Sobel did not tend to the matter in a reasonably timely manner. While this failure may not be as egregious as some of our other cases of neglect, Sobel's actions were neglect nonetheless. Accordingly, we conclude that Sobel violated Iowa Rule of Professional Conduct 32:1.3.

2. *Communication.* Rule 32:1.4(a)(3) requires an attorney to keep his client "reasonably informed about the status of the matter." Iowa R. of Prof'l Conduct 32:1.4(a)(3). A lawyer is required to inform a client about "significant developments affecting the timing or the substance of the representation." *Id.* r. 32:1.4(a)(3) cmt. [3]. Additionally, the client must be provided with enough information to allow the client to participate intelligently in decisions that concern the objectives of the representation. *Id.* r. 32:1.4(a)(3) cmt. [5].

Sobel stipulated that he did not communicate with Goodson in any manner until the hearing on October 4. Such lack of communication meant Goodson did not have an opportunity to review the PSI prior to the hearing. In fact, Goodson indicated to the judge during the hearing that this was the first time he had ever seen the PSI. Because he had not reviewed it, Goodson could not inform the judge whether he had any additions or corrections to the PSI. It was not until

after the judge provided Goodson and Sobel two recesses that Goodson was prepared to proceed with the sentencing.

There is no indication that Goodson was not reasonably informed about the status of the matter; however, by failing to inform Goodson he had not been able to review the PSI, Sobel failed to inform his client about a development that affected the substance of the representation. Further, Sobel's failure to review the PSI with Goodson prior to the hearing precluded Goodson from having sufficient information to intelligently participate in the resentencing hearing, which was an important objective of Sobel's representation. Therefore, we conclude that Sobel violated Iowa Rule of Professional Conduct 32:1.4(a)(3).

**B. Golubovic Matter.**

1. *Issue preclusion.* As a threshold matter, we must address Sobel's argument that the complaints made against him "are a matter of issue preclusion, having already been set aside by the Court," and that the matter is therefore barred from being relitigated. Specifically, Sobel asserts that the district court's finding of excusable neglect precludes a finding that he violated any of the disciplinary rules for his conduct in the Golubovic Matter. Sobel is correct that under Iowa Court Rule 36.17(4), either party is permitted to use principles of issue preclusion in an attorney discipline case. To invoke issue preclusion, the following three conditions must be met: (1) "[t]he issue has been resolved in a civil proceeding that resulted in a final judgment"; (2) "[t]he burden of proof in the prior proceeding was greater than a preponderance of the evidence"; and (3) "[t]he party seeking preclusive effect has given written notice to the opposing party, not less than 10 days prior to the hearing, of the party's intention to invoke issue preclusion." Iowa Ct. R. 36.17(4).

The issue in Golubovic Matter was whether Sobel's actions constituted excusable neglect. To prove good cause attributable to excusable neglect, the court

may look to "the cause for the movant's failure to timely answer, whether the movant intended to defend, whether the movant asserted a meritorious defense in good faith, and whether the movant ignored or willfully defied the rules of procedure." *No Boundary, LLC v. Hoosman*, 953 N.W.2d 696, 700 (Iowa 2021) (citing *Cent. Nat'l Ins. of Omaha v. Ins. of N. Am.*, 513 N.W.2d 750, 753, 755–56 (Iowa 1994)). Whereas here, the issue is whether Sobel's actions constituted a violation of the attorney disciplinary rules. As delineated below, determining whether Sobel committed "neglect" under the disciplinary rules requires a different analysis than an excusable neglect analysis. While the particular conduct at issue in both instances is the same, the relevant issue is not.

To properly invoke issue preclusion under Iowa Court Rule 36.17(4), the issue in the excusable neglect proceeding must be identical to the issue in the present case. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Rhinehart*, 827 N.W.2d 169, 177–78 (Iowa 2013). The requisite identity of issues is lacking here. Because the first condition under Iowa Court Rule 36.17(4) has not been satisfied, a determination of whether the remaining two conditions were met is unnecessary, and issue preclusion may not be invoked as a basis for determining that the Board failed to meet its burden of proof in the Golubovic Matter.

2. *Failure to properly terminate representation.* Rule 32:1.16(a)(2) requires a lawyer to withdraw from the representation of a client if "the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client." Iowa R. of Prof'l Conduct 32:1.16(a)(2). In *Iowa Supreme Court Attorney Disciplinary Board v. Cunningham,* we found that the board had not proven a violation of rule 32:1.16(a)(2) because the only evidence it relied on to show Cunningham's mental or physical health was his law partner's motion that stated Cunningham had "become incapacitated due to health reasons and [was] unable to

proceed" as counsel. 812 N.W.2d 541, 545, 548 (Iowa 2012) (alteration in original). We found that this was insufficient to prove that Cunningham's inadequacies at the time were due to a mental or physical impairment because there was no explanation as to when the health issues arose or the severity of such issues. *Id.* at 548.

Similarly, in *Iowa Supreme Court Attorney Disciplinary Board v. McCarthy*, we did not find a violation of rule 32:1.16(a)(2) when McCarthy had a heart attack and underwent heart surgery. 814 N.W.2d 596, 608 (Iowa 2012). While this was a physical health impairment, there was no indication that McCarthy's misconduct put his client at any disadvantage or that his failures were a result of his heart attack rather than his dilatory nature. *Id.*

On the other hand, in *Iowa Supreme Court Attorney Disciplinary Board v. Hoglan*, we found a violation of rule 32:1.16(a)(2) when Hoglan allowed several appeals to be dismissed for want of prosecution while he underwent three surgeries to correct a chronic, but nonemergency, back ailment. 781 N.W.2d 279, 282–84 (Iowa 2010) (per curiam). We also found a violation of rule 32:1.16(a)(2) in *Iowa Supreme Court Attorney Disciplinary Board v. Kingery*, when Kingery's struggle with bipolar disorder and alcoholism led to personal dysfunction, delayed court proceedings, "and the total absence of contact with clients over an extended period." 871 N.W.2d 109, 112–13, 120 (Iowa 2015).

Here, Sobel failed to timely serve the defendant in the Golubovic Matter, missed two hearings, and neither resisted the defendant's motion to dismiss nor sought a continuance or extension to respond. It was not until the court dismissed the case that Sobel decided to address his many failures. In his motion to set aside the dismissal, Sobel indicated he had been sick during the time to file a resistance, that he had "bronchitis and ear issues," difficulties with "diabetes management," needed to use his "rescue inhaler on multiple occasions," and

was quarantining because he had been exposed to COVID-19. He further indicated that he did not timely serve the defendant because he had undergone numerous procedures to solve various medical issues, a process which took over two and a half months to complete, from scheduling to follow-up appointments.

By his own admission, Sobel's physical health prevented him from timely serving the defendant and responding to the motion to dismiss, both of which were crucial to the continuation of his clients' case. Unlike *Cunningham* and *McCarthy*, it is evident that Sobel's physical health materially impaired his ability to represent his clients in the Golubovic Matter. Rather, Sobel's circumstances are analogous to those of *Hoglan* and *Kingery*. While we are sympathetic to Sobel's various physical health impairments, they do not excuse misconduct. *See Hoglan*, 781 N.W.2d at 287.

Knowing he was undergoing various medical procedures and suffering from multiple health conditions, Sobel should have withdrawn as counsel from the case. He even orally suggested to his clients that they find alternative counsel, which evidences Sobel's knowledge that his ability to represent his clients was impaired. Despite this, Sobel failed to withdraw as counsel in the Golubovic Matter. Thus, we conclude that Sobel violated Iowa Rule of Professional Conduct 32:1.16(a)(2).

3. *Expediting litigation.* Rule 32:3.2 states that "[a] lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client." Iowa R. of Prof'l Conduct 32:3.2. Attorneys are required to expedite litigation because "[d]ilatory practices bring the administration of justice into disrepute." *Id.* r. 32:3.2 cmt. [1]. "The question we address in failure-to-expedite cases is 'whether a competent lawyer acting in good faith would regard the course of action as having some substantial purpose other than delay.' " *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Weiland*, 885 N.W.2d 198, 210–11 (Iowa 2016) (quoting Iowa

R. of Prof'l Conduct 32:3.2 cmt. [1]). An attorney violates this rule by failing to timely "file documents, pursue appeals, and meet deadlines." *Id.* (quoting *Conroy*, 845 N.W.2d at 65).

Sobel failed to meet several deadlines. He did not timely serve the defendant, missed two hearings, and did not respond to the defendant's motion to dismiss until after the court had dismissed the case. Such failures cannot be said to have a substantial purpose other than delay. Therefore, we conclude that Sobel violated Iowa Rule of Professional Conduct 32:3.2.

4. *Prejudice to the administration of justice.* Under rule 32:8.4(d), a lawyer must not engage in conduct "prejudicial to the administration of justice." Iowa R. of Prof'l Conduct 32:8.4(d). "While there is no 'typical' conduct that prejudices the administration of justice, it includes conduct that hampers 'the efficient and proper operation of the courts,' such as unnecessary court proceedings, delays, or dismissals." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Beauvais*, 948 N.W.2d 505, 515 (Iowa 2020) (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Vandel*, 889 N.W.2d 659, 666 (Iowa 2017)); *accord Iowa Sup. Ct. Att'y Disciplinary Bd. v. Morse*, 887 N.W.2d 131, 143 (Iowa 2016); *Weiland*, 885 N.W.2d at 212.

The district court had to address Sobel's many failures in the Golubovic Matter. It first set a hearing to address Sobel's failure to timely serve the defendant. Because Sobel did not attend that hearing, the court was required to set another hearing, although it was eventually canceled after Sobel finally effectuated service. Additionally, the defendant was required to address Sobel's failures through a motion to dismiss and respond to Sobel's motion to set aside dismissal, both of which the court also had to address. This process delayed the continuation of the case for nearly eight months. It is clear that Sobel's actions resulted in additional court proceedings and caused other court proceedings to be

delayed. Accordingly, we conclude that Sobel violated Iowa Rule of Professional Conduct 32:8.4(d).

**C. Sanction.** There is no standard sanction for a particular type of misconduct. *Carpenter*, 781 N.W.2d at 270 (citing *Iowa Sup. Ct. Bd. of Prof'l Ethics & Conduct v. Plumb*, 589 N.W.2d 746, 748–49 (Iowa 1999)). Prior cases can be instructive, but we ultimately determine the appropriate sanction based on the particular circumstances of the case. *Id.* In fashioning the appropriate sanction, we consider

> the nature of the violations, the attorney's fitness to continue in the practice of law, the protection of society from those unfit to practice law, the need to uphold public confidence in the justice system, deterrence, maintenance of the reputation of the bar as a whole, and any aggravating or mitigating circumstances.

*Iowa Sup. Ct. Att'y Disciplinary Bd. v. Ireland*, 748 N.W.2d 498, 502 (Iowa 2008) (per curiam) (citing *Iowa Sup. Ct. Att'y Disciplinary Bd. v. McCarthy*, 722 N.W.2d 199, 205 (Iowa 2006)).

1. *Aggravating and mitigating factors.* There are several aggravating and mitigating factors to consider. *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. Baldwin*, 857 N.W.2d 195, 213–14 (Iowa 2014). First, multiple rule violations are an aggravating factor. *Beauvais*, 948 N.W.2d at 517. Relatedly, "[a] record of previous disciplinary action, especially that of the same nature as before the court presently, reflects negatively on an attorney's character." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Nelson*, 838 N.W.2d 528, 544 (Iowa 2013) (citing *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Marks*, 759 N.W.2d 328, 332 (Iowa 2009)). While a private admonition is not discipline, we do consider it as an "aggravating factor because it put [Sobel] on notice of his ethical requirements." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. West*, 901 N.W.2d 519, 528 (Iowa 2017).

In connection with the Goodson Matter and the Golubovic Matter, we determine that Sobel violated five rules: 32:1.3, 32:1.4(a)(3), 32:1.16(a)(2), 32:3.2, and 32:8.4(d). Sobel has been privately admonished six times since 2002 and has been publicly reprimanded three times since 2010. Particularly relevant to our analysis is the fact that Sobel has previously been admonished or reprimanded for violating all five of the rules he violated here. Some of which he was admonished or reprimanded for violating on more than one occasion.

Having been previously admonished or reprimanded for violations of the same rules, Sobel was on notice that similar conduct may warrant a sanction. *See West,* 901 N.W.2d at 528; *Weiland,* 885 N.W.2d at 215 (citing *Iowa Sup. Ct. Bd. of Prof'l Ethics & Conduct v. Daggett,* 653 N.W.2d 377, 381 (Iowa 2002)). These current violations show that Sobel has not learned from his previous disciplinary history. *See Weiland,* 885 N.W.2d at 215 (citing *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Hedgecoth,* 862 N.W.2d 354, 364 (Iowa 2015)). This is especially true considering Sobel has nearly forty years of experience in the practice of law. *See Vandel,* 889 N.W.2d at 669 (viewing substantial experience in the practice of law as an aggravating factor).

Further, "[a]n attorney's lack of remorse is an aggravating factor." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Ranniger,* 981 N.W.2d 9, 19 (Iowa 2022) (citing *Kieffer-Garrison,* 951 N.W.2d at 40). Here, Sobel has not shown any remorse for his actions or inactions. In fact, Sobel has consistently maintained that his conduct has not violated any rules because he believes none of his clients were harmed. While we do consider whether a client was harmed in fashioning the appropriate sanction, an absence of client harm does not preclude a finding that the rules have been violated. *See id.* (citing *Iowa Sup. Ct. Att'y Disciplinary Bd. v. McGinness,* 844 N.W.2d 456, 467 (Iowa 2014)).

We must also consider the mitigating factors present in the case. An attorney's legal work with underserved populations in the community is a mitigating factor. *Beauvais*, 948 N.W.2d at 518. We have also recognized an attorney's community service as a mitigating factor. *McGinness*, 844 N.W.2d at 467. Further, "[w]hile illnesses do not excuse misconduct, they can be mitigating factors and can influence our approach to discipline." *Hoglan*, 781 N.W.2d at 287. In fashioning the appropriate sanction, we take into consideration Sobel's assistance to individuals in underserved portions of the community, his volunteer service, and his physical ailments as mitigating factors.

The record does not indicate that any of Sobel's clients were arrested, incarcerated, or suffered financial harm due to his neglect. *See Kingery*, 871 N.W.2d at 122 (finding that arrests and jail time constitute harm); *Hedgecoth*, 862 N.W.2d at 364–67 (noting the attorney's neglect "did not cause any demonstrable financial or other harm"); *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Clarity*, 838 N.W.2d 648, 662 (Iowa 2013) (noting three clients were incarcerated due to the attorney's neglect); *Nelson*, 838 N.W.2d at 544 (noting the attorney's misconduct caused four clients to be arrested). Thus, we consider the lack of harm to Sobel's clients as a mitigating factor. *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. Van Ginkel*, 809 N.W.2d 96, 110 (Iowa 2012) (citing *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Casey*, 761 N.W.2d 53, 61 (Iowa 2009) (per curiam)).

Finally, we also consider Sobel's cooperation with the Board in the proceedings as a mitigating factor. "However, cooperation is 'expected and required' and therefore is not a significant mitigating circumstance." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Dunahoo*, 730 N.W.2d 202, 207 (Iowa 2007).

2. *Appropriate sanction.* This case primarily involves neglect and related conduct prejudicial to the administration of justice. For neglect violations, "our cases have imposed sanctions ranging from a public reprimand to a six-month

suspension." *Morse*, 887 N.W.2d at 145 (citing *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Lemanski*, 841 N.W.2d 131, 134 (Iowa 2013)); *see also Baldwin*, 857 N.W.2d at 213. If neglect is compounded with additional misconduct, the sanction is generally in the higher range. *Morse*, 887 N.W.2d at 145; *accord West*, 901 N.W.2d at 526 ("Often, the distinction between the punishment imposed depends upon the existence of multiple instances of neglect, past disciplinary problems, and other companion violations." (quoting *Marks*, 759 N.W.2d at 332)); *Weiland*, 885 N.W.2d at 213–14 (citing *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Silich*, 872 N.W.2d 181, 193 (Iowa 2015)) ("While a public reprimand is appropriate when there is a single incident of neglect, we impose a license suspension if the attorney has a pattern of misconduct or has violated multiple rules.").

The commission and the Board recommend a thirty-day suspension. On the other hand, Sobel argues the complaint against him should be dismissed and that no sanction is appropriate. We disagree. Sobel has a history of neglecting his clients, and his prior admonishments and reprimands have failed to curb the misconduct. In the present case, Sobel has violated five ethics rules, all of which he has violated on previous occasions. Sobel's pattern of unethical conduct raises a serious question about his fitness to practice law. *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. Powell*, 901 N.W.2d 513, 517 (Iowa 2017) (citing *Iowa Sup. Ct. Bd. of Prof'l Ethics & Conduct v. Beckman*, 674 N.W.2d 129, 139 (Iowa 2004)). "We begin to lose hope that lawyers will ever understand and meet their ethical obligations when they repeatedly engage in unethical conduct." *Id.* We are further troubled by the fact that Sobel does not view his conduct as improper. Given the nature of Sobel's misconduct, coupled with the extensive aggravating factors, we conclude a thirty-day suspension is appropriate.

The protection of the public and the reputation of the bar require more than a public reprimand, and a suspension is consistent with the discipline imposed in prior similar cases of neglect. *See Hedgecoth*, 862 N.W.2d at 366 (imposing a three-month suspension for neglecting multiple matters that neither resulted in client harm nor was accompanied by misrepresentations or other misconduct); *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Cohrt*, 784 N.W.2d 777, 779–783 (Iowa 2010) (imposing a three-month suspension for an attorney who "repeatedly failed to respond to interrogatories and requests for production of documents," had a history of neglect that resulted in a prior private admonition, and did not acknowledge his neglect and instead argued his conduct was ethically proper); *Iowa Sup. Ct. Bd. of Prof'l Ethics & Conduct v. Sprole*, 596 N.W.2d 64, 66 (Iowa 1999) (imposing a two-month suspension for an attorney's neglect of numerous matters in his representation of his clients in two separate cases).

## IV. Conclusion.

We hereby suspend Sobel's license to practice law in Iowa with no possibility for reinstatement for thirty days. Sobel's suspension will commence ten days from the date of this decision. Iowa Ct. R. 34.23(1). This suspension applies to all facets of the practice of law. Iowa Ct. R. 34.23(3). Sobel must also comply with the client and counsel notification requirements of Iowa Court Rule 34.24. We tax the costs of this action to Sobel under Iowa Court Rule 36.24(1).

**LICENSE SUSPENDED.**